PAVILION APARTMENTS, INC., *v.*
STATE TAX COMMISSION.

1. ADMINISTRATIVE LAW—DUE PROCESS—EVIDENCE.

An administrative agency hearing affecting the property of a party does not meet the minimum requirements of due process if the affected party is not afforded an opportunity to know, test, explain, or refute all of the evidence which may be relied upon by the administrative agency in reaching its decision.

2. TAXATION—STATE TAX COMMISSION—DUE PROCESS—SECRET REPORT.

Use of secret report containing recommendations as to value of plaintiff's property and denial by State tax commission of plaintiff's appeal for examination of such report, denied plaintiff a fair hearing and ignored a fundamental element of due process; since plaintiff was denied the right to cross-examine the authors or to offer rebuttal evidence.

3. SAME—STATE TAX COMMISSION DECISION—FORM ORDER—STATEMENT OF FACTS—REASONS.

Form order of State tax commission, issued by it after appeal by taxpayer, failed to comply with statutory requirements,

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 2 Am Jur 2d, Administrative Law §§ 353, 418.

where it omitted a concise statement of facts involved and reasons for the decision therein (CLS 1961, § 209.102).

Appeal from State Tax Commission. Submitted June 3, 1964. (Calendar No. 12, Docket No. 50,255.) Decided October 5, 1964.

Certiorari by Pavilion Apartments, Inc., a Michigan corporation, against the State Tax Commission to review its order of assessment of real property, upholding, over petitioner's protest, action by Detroit board of assessors and board of review. Matter remanded for further proceedings.

*Levin, Levin, Garvett & Dill* (*Charles L. Levin,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for defendant.

Adams, J. The question in this case is as follows: Did the State tax commission err as a matter of law in failing to make available to Pavilion Apartments, Inc., at the time of or during the proceedings before it, the field study report prepared by the commission's staff, and thus deprive appellant of the right to cross-examine the authors thereof or to offer rebuttal or further evidence in response thereto?

Plaintiff's property was assessed at $1,885,590 as of December 31, 1961. On June 27, 1962, plaintiff protested to the State tax commission and in its protest sought to raise the issue of uniformity of assessments in the following language:

"The assessment is erroneous and not made in compliance with law by reason of inequality having been made at a higher proportionate valuation than

the assessments of other real property in the city of Detroit, Michigan."

. On November 16, 1962, plaintiff's attorney inquired whether the State tax commission had promulgated any published rules regulating procedures before the commission. He was advised that it "does not have a published set of rules on regulation on appeals."

. On December 9, 1962, plaintiff sought to ascertain what procedure would be followed in connection with its appeal and specifically requested that it be given an opportunity in advance of the hearing:

"to examine the reports and studies which were prepared for the commission by its own staff which will be considered by the commission in reaching a determination in this case."

Plaintiff received no response to its request.

On December 13, 1962, during the course of the hearing before the State tax commission, plaintiff's attorney again requested an opportunity to examine the report which was prepared by the commission's staff. Chairman Eckhardt responded:

"No, sir, that is confidential to the commission itself."

At the conclusion of the hearing, Chairman Eckhardt stated that while neither the city of Detroit nor the taxpayer could see the field sheets until after the appeal was processed: "you are both welcome to come in and look at the appeal [field?] sheets after the decision is made by the commission."

On January 14, 1963, the commission issued a form order confirming the previous assessment entered by the board of review of the city of Detroit.

On February 16, 1963, the taxpayer requested an opportunity to examine the investigative study and report prepared by the commission's staff, and, by

letter 3 days later from the secretary of the commission, was advised:

"The appraisal sheets for the Pavilion Apartments as prepared by the State tax commission staff will be made available to you as soon as is possible *after disposition of the action which you have begun in the State Supreme Court."* (Emphasis added.)

On February 22, 1963, the secretary of the State tax commission certified the record of proceedings had before it. The certification, made up of 10 items, was protested by the taxpayer as being incomplete. A new certification was prepared by the secretary of the commission on February 28, 1963, made up of 18 items, and on the same date a letter was sent to the taxpayer's attorney to advise him of the material that had been added to the certified record. Item "H" in the letter was described as follows:

"Official summary sheets of the State tax commission's field staff relative to appraisal of Pavilion Apartments, Inc."

Purportedly, a copy of this item was enclosed.

On March 2, 1963, the taxpayer's attorney wrote in response to this letter, saying in part:

"What you sent me were 2 sheets of paper, one of which shows the assessed valuation  *  *  *  and the other of which indicates that a report from Mr. E. Beren has been sent to Mr. Markle;  *  *  *
*"I am morally certain that there is such a report, and that it is part of the original file.*
"During the course of our telephone conversation you stated that there are pencilled notes and work papers which the commission refuses to make part of the certified record. As I have stated in this letter, *I feel sure that the documents in the commission's file that have not been made part of the certified record are more extensive than pencilled notes or work papers."* (Emphasis added.)

The taxpayer's attorney received no answer. Leave to appeal to the Supreme Court was granted on June 3, 1963. On October 25, 1963, motion was filed on behalf of the State tax commission to dismiss the appeal because of failure on the part of the appellant to print all of the proceedings in its appendix.

In the brief dated October 25, 1963, filed by the attorney general in support of the motion to dismiss the following statement appeared:

"There is omitted  *  *  *  the detailed valuation study made by the staff of the State tax commission."

Incredible as it may seem, *this was the first specific acknowledgment the taxpayer had been able to elicit of the existence of the detailed valuation study concerning which the taxpayer's attorney had made repeated inquiry* for a period of nearly a year! Appellee not only failed to produce the report as promised but moved this Court to dismiss plaintiff's appeal for failing to print a report it could not get! On November 7, 1963, upon inquiry to the clerk of the Supreme Court, the taxpayer's attorney ascertained the existence of a 15-page report which the clerk transmitted the next day.

The report of E. Beren, printed in a supplemental appendix, consists of an appraisal of the land, buildings and improvements; sets forth the assessor's contentions, the appellant's contentions, and states:

"It must be pointed out that the appellant has been extremely helpful. No request made by this investigator has been refused."

The report gives a detailed history of the taxpayer's property, pointing out that it is the first high rise apartment development made in an area that had been established for urban renewal.

"The appellant has gambled on this building in the city of Detroit. At present his gamble is not producing positive results.  *  *  *

"This building has never enjoyed full occupancy. *  *  * A market analysis and apartment absorption study conducted for the appellant by the Mid-America Appraisal Corporation stated 'In order to even reach the break-even point, Pavilion must be approximately 95% occupied at *current rentals,* furnishing the present services.' The current occupancy is 85%.  *  *  *

"This investigator has made and submitted with this report a projected operating statement—1962. My projected net income prior to capital charges is $219,000. This is a lower net income than was recorded in 1960 and 1961."

Enough has been quoted to indicate that if the taxpayer had had an opportunity to see the report before the hearing, or had had an opportunity at the hearing to examine the person making the report, the taxpayer might have been able to make a more compelling presentation and produced a different result.

Apparently even the State tax commission now concedes the essential fairness of such a procedure since, while it still maintains upon this appeal that it was not required to produce the report or the maker thereof for cross-examination, the Court is advised in a footnote in appellee's brief:

"The current practice of the commission is to make available to interested parties its staff investigation report if requested."

The duty of the State tax commission to investigate complaints is provided for in section 150 of the general property tax act (CL 1948, § 211.150 [Stat Ann 1960 Rev § 7.208]).* The supreme court

---

* The powers and duties of the "board" referred to in the act are now vested in the State tax commission. See CL 1948, §§ 209.152, 209.103 (Stat Ann 1960 Rev §§ 7.621, 7.633). See, also, revision of

of the United States in *Interstate Commerce Commission* v. *Louisville & Nashville R. Co.*, 227 US 88 (33 S Ct 185, 57 L ed 431), held that an administrative hearing affecting the property of a party does not meet the minimum requirements of due process if the affected party is not afforded an opportunity to know all of the evidence which may be relied upon by the administrative agency in reaching its decision. The court said (p 93) that denial of such an opportunity:

"would nullify the right to a hearing,—for manifestly there is no hearing when the party does not know what evidence is offered or considered and is not given an oportunity to test, explain, or refute."

In *Ohio Bell Telephone Co.* v. *Public Utilities Commission of Ohio*, 301 US 292 (57 S Ct 724, 81 L ed 1093), where the court held invalid an order directing the refund of rates collected, it was said (p 300):

"The fundamentals of a trial were denied to the appellant when rates previously collected were ordered to be refunded upon the strength of evidential facts not spread upon the record."

*Mazza* v. *Cavicchia*, 15 NJ 498 (105 A2d 545), was a suit challenging the validity of an order of the director of the division of alcohol controls suspending a license to sell alcoholic beverages. Chief Justice Vanderbilt held that the "principle of the exclusiveness of the record" necessarily barred the use of the hearing officer's report by the director of the division in arriving at his decision, since a fair hearing demanded that if the report was to be used by the director a copy thereof must be given to the licensee (pp 514, 519).

"Unless this principle is observed, the right to a hearing itself becomes meaningless. Of what real

section in PA 1964, No 275, p 490 (Stat Ann 1964 Current Material, p 643).—REPORTER.

worth is the right to present evidence and to argue its significance at a formal hearing, if the one who decides the case may stray at will from the record in reaching his decision? Or consult another's findings of fact, or conclusions of law, or recommendations or even hold conferences with him? * * *

"We have not been able to find a single case in any State of the Union, nor have any been cited to us, justifying or attempting to justify the use of secret reports by a hearer to the head of an administrative agency. To approve such a practice in deciding an administrative controversy would be to confer on New Jersey the dubious distinction of being the only jurisdiction in the United States to ignore a fundamental element of due process and fair play."

The use by the State tax commission of a secret report, containing recommendations as to value and rejection of Pavilion's appeal, denied Pavilion a fair hearing and ignored a fundamental element of due process.

A further question is: Did the State tax commission, in issuing its opinion and order, violate the provision of PA 1960, No 147 (CLS 1961, § 209.102 [Stat Ann 1963 Cum Supp § 7.632]) which provides that:

"On appeals, the State tax commission shall report all decisions in writing with a concise statement of the facts and reasons for the decisions, which decisions shall be signed by the commissioners concurring therein. Any commissioner dissenting from any decision shall give the reasons for such dissent in writing over his signature. All such decisions shall be filed in the office of the State tax commission and shall be mailed or delivered to the appellant or his legal representative."

Both Pavilion and the city of Detroit submitted proposed findings of fact. The order entered by the

commission on January 14, 1963, was *a form order* reading as follows:

"After consideration of the reasons spelled out in the taxpayer's written appeal, dated June 28, 1962, and after consideration of the facts adduced at a hearing held at Tax Comm Off., 1100 Cadillac Sq. Bldg., Detroit, Michigan on the 3d day of December, 1962, at which the above taxpayer was represented by counsel and/or in person, and at which hearing the appellant presented testimony and argument and exhibits (reports and statements) in support of contention, and after investigation by the commission; and after full consideration of all of the above, it is determined that the real property of the appellant is correctly assessed and that the assessment has been made in compliance with law." (Underscored material was inserted into form.)

Considering the complexity of the issues which were raised by Pavilion on its appeal, the order was wholly inadequate and failed to meet the requirements of the statute. It does not contain either a concise statement of the facts or the reasons for the decision. This Court customarily reviews actions of the commission to correct flaws, error, or the application of illegal principles (*Twenty-Two Charlotte, Inc.,* v. *City of Detroit,* 294 Mich 275; *Kingsford Chemical Company* v. *City of Kingsford,* 347 Mich 91). It is essential that the provisions of the statute be followed and proper findings of fact and reasons be given to permit review.

The taxpayer announced at the very outset of its appeal to the State tax commission that it was its contention the assessment was erroneous because it was made at a higher proportionate valuation than the assessments of other real property in the city of Detroit. Upon this record, there being a clear indication that real property in Detroit was

being assessed much less than cash value, the taxpayer was entitled to a determination of the facts with regard to such issue. The same should be set forth in the decision of the commission together with its reasons therefor.

The matter is remanded to the Michigan State Tax Commission for further proceedings in accordance with this opinion. Costs to appellant.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and O'HARA, JJ., concurred.