COOPER TOWNSHIP v STATE TAX COMMISSION

1. TAXATION—EQUALIZATION—TOWNSHIPS—REMAND—HEARING.

A tax equalization case should be remanded for a new hearing where the State Tax Commission failed to follow its own declarations and the clear mandate of prior case law in that it did not disclose to a township all papers known to the commission that were relevant to a final resolution of the issues at an equalization hearing.

2. TAXATION—STATE TAX COMMISSION—STATUTES—FINAL DECISION—REMAND.

A final order of the State Tax Commission failed to comply with the statute which requires the commission to include within its final decision a concise statement of facts and the reasons for its decision where the commission's order, which functioned as both an order and opinion, was conclusory in terms and failed to state any of the specific information required by the statute (MCLA 209.102).

3. ADMINISTRATIVE LAW—STATUTES—TAXATION—EQUALIZATION—STATE TAX COMMISSION.

Statutory language which provides "[i]n all of its proceedings the contested case provision of Act No. 197 of the Public Acts of 1952, as amended [administrative procedures act] shall not be applicable to the state tax commission * * * " refers only to the individual taxpayer appeals which are the object of that statute and not to all matters coming before the commission; if the Legislature had intended to affect equalization procedures it would have specifically amended a statute concerning equalization by counties as well as the statute it did amend (MCLA 211.34, 211.152).

4. TAXATION—STATE TAX COMMISSION—HEARING—CONTESTED CASE—CONSTITUTIONAL LAW—DUE PROCESS.

The State Tax Commission is bound to conduct its hearings in keeping with rudimentary requirements of due process; when a

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 72 Am Jur 2d, State and Local Taxation §§ 722, 831–833.
[7] 72 Am Jur 2d, State and Local Taxation § 759 et seq.

particular controversy fits within the statutory definition of a "contested case", and is not specifically controlled by another statute or constitutional provision, the commission is required to comply with the procedures specified in the Administrative Procedures Act (MCLA 24.201 *et seq.*).

5. Taxation—Equalization—Townships—Counties.

A township, as the representative for equalization purposes of all the taxpayers within its boundaries, has a valid and recognizable interest in assuring that its residents are not taxed at an unfair rate; likewise, the county board of commissioners, as representative of the entire county, has a duty to equalize the assessments throughout the county so that all taxpayers pay a proportionately fair share of the cost of government.

6. Taxation—Equalization—Townships—Counties—Administrative Law—Administrative Procedures Act—Contested Case.

Disputed assessment equalization findings between a township and a county present a controversy squarely within the Administrative Procedures Act definition of a "contested case" (MCLA 24.203, 24.271–24.287).

7. Taxation—True Cash Value—Cost of Sale—Statutes.

The statute defining true cash value for assessment purposes makes no mention of such factors as commissions, abstract and deed expenses, or any other costs normally associated with the sale of real property and cost of sale is not to be considered in determining true cash value (MCLA 211.27).

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and V. J. Brennan and J. H. Gillis, JJ., denying application for leave to appeal from State Tax Commission. Submitted December 4, 1973. (No. 12 December Term 1973, Docket No. 53,722.) Decided November 8, 1974.

Petition by Cooper Township to the State Tax Commission to review the equalized value of the township. Petition denied. Petitioner's application for leave to appeal to the Court of Appeals denied. Petitioner appealed to the Supreme Court. Remanded to the State Tax Commission for a full hearing on the merits. County equalized valuation

ordered as shown on a certain schedule. Petitioner appeals. Order vacated and remanded to the Tax Tribunal for further proceedings.

*Bauckham, Reed, Lang & Schaefer,* for petitioner.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for respondent.

SWAINSON, J. In 1971 the Cooper Township Supervisor prepared the Township's 1971 assessment roll at what he considered 50% of true cash value as required by law. The Township Board of Review thereafter inspected the assessment roll, made adjustments, and certified to the Kalamazoo County Board of Commissioners that the assessment roll stood at 50% of true cash value.

The Cooper Township assessment figures were then reviewed by the Kalamazoo County Board of Commissioners as required by MCLA 211.34; MSA 7.52. On review, the Board of Commissioners accepted the report of the Kalamazoo County Equalization Director which concluded that the Cooper Township assessment was made at a ratio of only 42.27% of true cash value and therefore, should be increased in value.

Cooper Township (Township) filed a petition for review of the Kalamazoo County Board of Commissioner's decision with the State Tax Commission (Commission). The Commission, by letter, informed the Township that its petition for review was being denied because "the supervisor did not at the time of filing the appeal have evidence of discrimination against the township in the adoption of the equalization report." See, MCLA 211.34;

MSA 7.52. The Township then appealed to the Court of Appeals which subsequently denied leave. This Court on December 22, 1971, granted leave and summarily remanded the case to the Commission for a full hearing on the merits. *Cooper Twp v State Tax Commission,* 386 Mich 777 (1971).

After this Court remanded the matter for a hearing on the merits, the Commission assembled a staff of appraisers and assigned them to Kalamazoo County to conduct a full equalization study. The Township, in a letter dated January 7, 1972, requested that it be allowed to copy all "work sheets, forms, materials, and documents which are to be used in such reinvestigation or generated as a result of the same as said documents are prepared." The Commission denied the Township permission to copy the staff papers as they were prepared, but in a letter of January 27, 1972 did agree to allow "the supervisor of Cooper Township [to] examine the appraisals of the State Tax Commission in the Tax Commission office and any copies of the appraisals that he desires will be reproduced and provided at a cost of 10¢ per page."

On April 4, 1972, the Commission informed the Township that it had completed its study of Kalamazoo County and would make available "the detailed appraisal record cards of any of the properties * * * as you request." On May 11, the Township attorney went to the Commission's office, copied the available appraisal forms and requested to copy any additional papers used in the study. In response to this request the Commission replied by letter on May 16, 1972:

"Dear Mr. Reed:
"On the occasion of your visit to the Tax Commission office on Thursday, May 11, 1972, I informed you that

on occasion, appraisals by the State Tax Commission staff contain additional work papers in those instances where the property is of such complexity that the ordinary appraisal card is not sufficient to contain all of the information.

"As a result of your request for additional work papers, if any, we examined the files in the matter of the appraisals in Cooper Township made as a result of the equalization study for 1971, copies of which appraisals were furnished to you, and find no instances where any additional sheets or work papers to be attached because none of the appraisals in Cooper Township were of such complexity as to require any."

The equalization hearing began on June 21, 1972. As the hearing opened, the Township renewed its prior written request that the hearing be conducted by an impartial hearing officer and in accordance with the procedures of the Administrative Procedures Act. This motion was denied by the Commission chairman acting in the capacity of the presiding officer at the hearing. The parties then began their presentation of evidence.

During the course of the hearing, it became apparent that the Commission's staff appraisers were relying on working papers that had not been produced for the prior inspection of the Township's attorney. The Township attorney objected, demanding the right to inspect any working papers used by the Commission staff in the preparation of their appraisals. At this point, the Commission Chairman interjected:

"*The Chairman:* Mr. Reed, I concur you were supposed to be furnished with all the work papers to be considered by the Commission, in my understanding. That is what I was told. These were not in the files as a part of the Commission's viewing of Cooper Township. Am I correct?

                *  *  *

"*The Chairman:* Understand the position of the Com-

mission. The Commission is a separate entity from the Tax Commission staff. The files that come before the Commission as part of the consideration were the files I brought with me yesterday and which you viewed and went through. Some of them I see had more notes in them than others. This is true at any time we have any kind of appeal files or appraisal files.

"If there are other papers, which seems to be the case in Cooper Township, or field man notes, whether they are legible or not I can't tell you, but these should be furnished you then if that is the case. Maybe sometimes they do things one way and sometimes the other. I don't know how the men operate on this. This is not my area of telling them what to do because I do not tell them how to handle their job.

"If there are other papers you will be furnished with them."

After this seeming misunderstanding was resolved, the hearing resumed with the Township receiving the staff notes requested.

At a later point in the hearing, however, the issue of disclosure again emerged. During the cross-examination of Commission staff appraiser, Arthur V. Stephan, the following colloquy developed:

"*Q.* To what are you referring? Are those your field notes?

"*A.* Right.

"*Q.* Did we obtain copies of those?

"*A.* To my knowledge, no.

"*Mr. Bauckham [Attorney for Cooper Township]:* I would request respectfully that we be furnished those copies.

"*The Chairman:* Request is hereby denied. They do not come before the Commission for consideration. That request is denied. You have been given everything that comes before the Commission. This is the man's notes when he does the appraisal.

\*    \*    \*

"*The Chairman:* I am saying your request is denied on these type of notes. These are the type of notes that I say you do not need to get, because they are not a part of any consideration here. This is a judgmental factor, how he arrived at the value."

Counsel for the Township formally noted his objection to the Chairman's ruling and the hearing continued.

The remainder of the hearing elicited contested opinions on the actual value of the property studied as well as disagreements regarding appraisal techniques and the definition of the constitutional term "true cash value". The hearing concluded on August 30, 1972 and the final order of the Commission was handed down on November 22, 1972. After a recitation of the prior history of the case, the Commission rendered its decision:

"At the hearing, beginning on June 21, 1972 and continuing on June 22, July 20, July 21, August 29 and August 30, 1972, the Commission received evidence in the way of exhibits, heard testimony of the Tax Commission staff and the appellant supervisor's witnesses and argument from the attorney for the appellant.

"Subsequent to the hearing the Commission received a copy of the transcript consisting of 1159 pages. Also subsequent to the hearing, the Commission, over the course of several days, reviewed the exhibits presented and also the written summation submitted by the appellant's attorney.

"At a meeting of the State Tax Commission, held on November 20, 1972, at which all members of the Commission were present, the appeal of Cooper Township was before the Commission for consideration and final decision. The Commission noted that the proceeding and the cause had resulted in many days of hearings and documentation amounting to thousands of pages as well as a complete analysis of the entire county by the State Tax Commission staff. The Commission further considered that except for Cooper Township and Ross

Township none of the other local units posed any objection to the preliminary finding of the State Tax Commission as transmitted on April 14, 1972.

"The Commission realizes that it is expected to substitute its best value judgment even though it displaces a substantially correct, although inexact judgment exercised by the County Board of Commissioners. Wherefore, it finds and orders that the county equalized valuations of the real estate of the several townships and cities in Kalamazoo County for the year 1971 are as shown on the following schedule which constitutes the equalized valuation of the several townships and cities, real property, for the year 1971 in Kalamazoo County:

| TOWNSHIPS | Real Estate Valuation as Equalized by the State Tax Commission |
|---|---|
| * * * | |
| Cooper | 22,090,824[1] |
| * * * | |

"The Commission notes that despite all of the hours devoted to this appeal by the township, the township attorney, the State Tax Commission staff and the Commission in conducting the hearings and deliberations, that the equalization as adopted by the County Board of Commissioners is practically confirmed except in minimal respects."

Cooper Township, in accordance with this Court's order of December 22, 1971, filed an application for leave to appeal directly in the Supreme Court. Leave to appeal was granted on May 31, 1973. 389 Mich 798 (1973).

I

This appeal raises three issues of significance to the resolution of the case at bar and to the proper

---

[1] The assessed valuation of the real property in Cooper Township was placed at $18,616,950 by the Township Board of Review.

resolution of future cases coming before the State Tax Commission.

1. Did the State Tax Commission err by denying the Township access to Commission staff working papers compiled during the investigation and preparation of assessments directly in issue at its equalization hearing?

2. Is the State Tax Commission required by law to conduct equalization hearings in accordance with the Administrative Procedures Act?

3. Should the costs normally associated with the sale of real property be deducted when computing "true cash value"?

## II

*Access to Staff Working Papers.*

What became evident to Cooper Township at the equalization hearing became evident to this Court at oral argument—the State Tax Commission failed to follow its own declarations and the clear mandate of *Pavilion Apartments, Inc v State Tax Commission,* 373 Mich 601; 130 NW2d 399 (1964), and disclose to the Township all papers known to the Commission that were relevant to the final resolution of the issues at the equalization hearing. Accordingly, on December 5, 1973, this Court issued the following order:

"On order of the Court, this matter is remanded to the State Tax Commission for the purpose of providing appellant Cooper Township, within 20 days of the date of entry of this order, with the opportunity to inspect and copy or photograph each and every document (including field notes, staff papers, sales studies and appraisals), books, letters, photographs, accounts, objects or tangible things relevant to the subject matter involved in this appeal and in the possession, custody or

control of the State Tax Commission and/or the Kala-
mazoo County Equalization Board.

"Appellant Cooper Township is ordered to advise this
Court through a supplemental brief filed within 20 days
after it has completed inspecting the materials set forth
above, whether it has received all of the information
necessary to proceed with disposition of this cause.
Twenty-four copies of the supplemental brief should be
filed with the Clerk of the Court and a copy thereof
served upon counsel for the State Tax Commission who
may then reply. Proof of such service shall also be filed
with the Clerk. The requirement for printing is waived.

"This Court retains jurisdiction in this matter and
enters this order pursuant to GCR 1963, 865.1(5)."

Counsel for the Township subsequently informed
the Court, as directed in the order, that the Com-
mission did turn over 374 pages of additional
material and, in addition, the Kalamazoo County
Equalization Director made available 13 pages of
material. Counsel is presently of the opinion that
the Township has been furnished "all material,
field notes and work papers, in possession of the
State Tax Commission and/or staff members who
testified * * * ." The Township states that, "this
material will greatly facilitate a future hearing if
one is held", and now repeats its prayer for relief
requesting that this matter be remanded for a new
evidentiary hearing.

Following *Pavilion Apartments,* we agree with
the Township that this case should be remanded
for a new hearing. We devote the remainder of
this opinion to matters that we believe are neces-
sary to the proper treatment of this case on re-
mand to the State Tax Commission.

Before proceeding to the other issues raised by
the Township, we *sua sponte* refer the Commission
to the second portion of the opinion in *Pavilion
Apartments.* Therein Justice ADAMS pointed out

that MCLA 209.102; MSA 7.632 requires the Commission to include within its final decision a concise statement of facts and the reasons for its decision. 373 Mich 601, 608–609 (1964). More precisely, the statute has since been amended by 1967 PA 304 to read in relevant part:

"In appeals to the state tax commission, the decisions of the commission shall be upon a form prescribed by the commission which shall state the facts constituting the commission's finding of true cash value, the proportion thereof at which assessments in the local assessing district are made, and which of the 3 commonly accepted valuation approaches were used in the determination of true cash value. The order shall be signed by the commissioners concurring therein. A commissioner may, in writing, dissent from any order so entered."

The final order of the Commission in the present matter fails to comply with the requirements of MCLA 209.102; MSA 7.632. The Commission's order, which functioned as both an order and opinion, is conclusory in terms and fails to state any of the specific information required by the statute. On remand we direct the Commission to render its opinion in accordance with MCLA 209.102; MSA 7.632.

III

*Equalization Hearings and the Administrative Procedures Act.*

Although this Court and the Legislature have clarified the procedures to be followed by the State Tax Commission in appeals by individual taxpayers,[2] the procedures to be followed in equalization

[2] In *Fisher-New Center Co v State Tax Commission,* 381 Mich 713, 714–715; 167 NW2d 263 (1969) and *In re Appeal of General Motors Corp,* 376 Mich 373; 137 NW2d 161 (1965), this Court reversed the position it had adopted in *Dossin's Food Products, Inc, v State Tax*

cases have not been defined. Except for specifying
the time limits within which an aggrieved Town-
ship must notify the Commission of its desire for a
hearing, MCLA 211.34; MSA 7.52 does not describe
the procedures governing equalization hearings.
The Commission is bound, of course, to conduct its
hearings in keeping with the rudimentary require-
ments of due process. *Napuche v Liquor Control
Commission,* 336 Mich 398, 403; 58 NW2d 118,
120–121 (1953). The issue raised by appellant ad-
dresses whether the Commission must follow the
applicable requirements of the Administrative Pro-
cedures Act. MCLA 24.201 *et seq.;* MSA 3.560 (101)
*et seq.*

When a particular controversy fits within the
statutory definition of a "contested case", and is
not specifically controlled by another statute or
constitutional provision, we believe that the Com-
mission is required to comply with the procedures
specified in the Administrative Procedures Act.
The Administrative Procedures Act defines a "con-
tested case" to be "a proceeding * * * in which a
determination of the legal rights, duties or privi-

---

*Commission,* 360 Mich 312; 103 NW2d 474 (1960), and held, in the
context of individual taxpayer appeals, that the Administrative Proce-
dures Act was applicable to the State Tax Commission. Shortly after
the decision in *Fisher-New Center,* the Legislature added to MCLA
211.152; MSA 7.210 the following language:

"In all of its proceedings the contested case provision of Act No. 197
of the Public Acts of 1952, as amended, [Administrative Procedures
Act] shall not be applicable to the State Tax Commission * * * ."

The Commission argues that this above quoted statutory language
refers to all matters coming before the Commission and not only to
the individual taxpayer appeals which are the object of MCLA
211.152; MSA 7.210. In our opinion, this argument is defeated by
elementary rules of statutory construction. *See People v Powell,* 280
Mich 699; 274 NW 372; 111 ALR 721 (1937); 73 Am Jur 2d, Statutes,
§ 214. If the Legislature had intended to affect equalization proce-
dures, we are confident that it would have specifically amended
MCLA 211.34; MSA 7.52 as well as MCLA 211.152; MSA 7.210.

leges of a named party[3] is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCLA 24.203; MSA 3.560 (103). The Township, as the representative for equalization purposes of all the taxpayers within its boundaries, has a valid and recognizable interest in assuring that its residents are not taxed at an unfair rate. Likewise, the county board of commissioners, as representatives of the entire county, have a duty to equalize the assessments throughout the county so that all taxpayers pay a proportionately fair share of the cost of government. By statute, the State Tax Commission is designated as the agency responsible for adjudicating disputed equalization findings between the township and the county. In that capacity it is authorized to conduct an evidentiary hearing. MCLA 211.34; MSA 7.52. In our opinion, therefore, the present matter presents a controversy squarely within the Administrative Procedures Act definition of a "contested case".

On remand, the State Tax Commission shall conduct the equalization hearing under the relevant provisions of the Administrative Procedures Act. MCLA 24.271–24.287; MSA 3.560 (171)–3.560 (187). Since in the present appeal we are only

---

[3] A "party" is defined as a "person or agency named or admitted, or properly seeking and entitled of right to be admitted, as a party in a contested case." MCLA 24.205(3); MSA 3.560(105)(3). "Person" includes "[a] governmental subdivision or public or private organization of any kind other than the agency engaged in the particular processing of a rule, declaratory ruling or contested case." MCLA 24.205(4); MSA 3.560(105)(4).

Both Cooper Township and Kalamazoo County meet the definition of person and party. Under MCLA 211.34; MSA 7.52, the township and the county become the adversary parties in an equalization hearing held before the State Tax Commission. Each must receive notice and be allowed an opportunity to present evidence. The State Tax Commission sitting as an administrative court reviews the evidence presented and thereafter renders its decision on the proper equalization of the governmental units.

concerned with errors of law, we specifically do not address any questions concerning the scope of judicial review under Const 1963, art 6, § 28.

## IV

*True Cash Value.*
Const 1963, art 9, § 3 provides:

"The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. * * * "

The statutory definition of "cash value" is found in MCLA 211.27; MSA 7.27:

" 'Cash value', means the usual selling price at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale. Any sale or other disposition by the state or any agency or political subdivision of lands acquired for delinquent taxes or any appraisal made in connection therewith shall not be considered as controlling evidence of true cash value for assessment purposes. In determining the value the assessor shall also consider the advantages and disadvantages of location, quality of soil, zoning, existing use, present economic income of structures, including farm structures and present economic income of land when the land is being farmed or otherwise put to income producing use, quantity and value of standing timber, water power and privileges, mines, minerals, quarries,

or other valuable deposits known to be available therein and their value."[4]

It is the Township's position that when the Constitution's framers chose the unique term "true cash value" they had in mind a determination of value not necessarily synonymous with the more common term "fair market value". In the opinion of the Township, "true cash value" more properly refers to "that portion of the theoretical consideration paid which is net to the seller. Put in another fashion, if the theoretical price of the theoretical seller's home is $20,000 but he leaves the theoretical closing table with only $18,500 [there being $1,500 expenses of sale], the 'true cash value' of the real estate is $18,500."

The Township, however, points to no authority, judicial or otherwise, to buttress its argument.

We are confident that the State Tax Commission followed the clear intent of the Legislature as expressed in MCLA 211.27; MSA 7.27 when it refused to consider costs of sale in the determination of true cash value. The statute, while it states many factors that the assessor should consider in reaching his opinion of value, makes no mention of such factors as commissions, abstract and deed expenses, or any other costs normally associated with the sale of real property. If the Legislature had intended these expenses to be deducted, we believe that it would have made its intention apparent in the language of the statute. See, generally, *State ex rel Morgan v Kinnear,* 80 Wash 2d 400; 494 P2d 1362 (1972); *The Michigan Property Tax: Assessment, Equalization, and Taxpayer Appeals,* 17 Wayne L Rev 1397, 1415–1417 (1971).

---

[4] The quoted text of the statute includes the amendments thereto adopted in 1973 PA 109. The 1973 changes have no bearing upon the issue presently under consideration.

ADDENDUM

After the initial preparation of this opinion the new Tax Tribunal Act, MCLA 205.701, *et seq.;* MSA 7.650(1), *et seq.,* transferred jurisdiction over equalization appeals, such as the present case, from the State Tax Commission to the Tax Tribunal. Accordingly, we remand this matter to the Tax Tribunal for further proceedings. In this opinion no consideration has been given to the practices and procedures of the Tax Tribunal nor to any provision of the Tax Tribunal Act.

The order of the State Tax Commission is vacated and this case remanded to the Tax Tribunal for further proceedings in conformity with this opinion.

No costs, a public question being involved.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with SWAINSON, J.

J. W. FITZGERALD, J., did not sit in this case.