BRITTANY PARK APARTMENTS v HARRISON TOWNSHIP

Docket Nos. 45521, 45522, 45523. Submitted May 7, 1980, at Detroit.
—Decided March 3, 1981.

Brittany Park Apartments, Brittany Park Apartments #2 and
Morton L. Scholnick and others, all owners of real property in
Harrison Township in Macomb County, Michigan, were notified
on March 1, 1975, of their 1975 tax assessments. Upon subse-
quent inquiry, they learned that the tentative equalization
factor for Harrison Township would be 1.0. These taxpayers
filed timely protests of their assessments with the local board of
review. These protests were denied. No further appeals were
taken at that time. In May, 1975, the State Board of Equaliza-
tion increased the state equalization factor for Macomb County
from 1.0 to 1.28254. Macomb County proceeded to levy taxes
based upon the tentative equalization factor of 1.0 while seek-
ing review of the state equalization. The parties paid their 1975
taxes as spread on the basis of an equalization factor of 1.0. On
October 8, 1976, the Tax Tribunal dismissed Macomb County's
appeal and thereby affirmed the state equalization factor. The
Macomb County Board of Commissioners, acting pursuant to
MCL 211.39a; MSA 7.80(1), determined not to levy any addi-
tional taxes for 1975. A number of school districts within the
county brought an action in Macomb Circuit Court seeking to
compel the levy of the additional taxes for 1975. On May 17,
1978, the Macomb Circuit Court ordered Harrison Township, as
statutory agent for the school districts located therein, to levy
additional school taxes for 1975 in accordance with the state
equalized value. In July, 1978, the township sent out an addi-
tional tax bill to all taxpayers. Protests were filed with the
State Tax Tribunal, asserting that the additional assessment
for 1975 occasioned by the application of the state equalization
factor raised their assessments for that year above the constitu-
tional limitation of 50% of actual cash value. Petitioners addi-
tionally argued that the 1978 levy of 1975 taxes violated the

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 71 Am Jur 2d, State and Local Taxation §§ 150-156.
    72 Am Jur 2d, State and Local Taxation § 780.
[2-4] 72 Am Jur 2d, State and Local Taxation §§ 831-833.

provisions of MCL 211.34; MSA 7.52 as amended by 1975 PA 243. The township filed a motion for accelerated judgment and/or a motion to dismiss. The Tax Tribunal held that the petitioners lacked standing to proceed before the tribunal, apparently viewing the nature of the petitioners' claims as being an appeal of the state equalization, and that the provisions of MCL 211.34; MSA 7.52 as amended by 1975 PA 243 did not apply to this matter dealing with the 1975 tax year and dismissed petitioners' petitions. Petitioners appeal. *Held:*

1. The Tax Tribunal erred in dismissing the petitioners' petitions for lack of standing. Petitioners, as taxpayers, have the right to challenge an assessment which exceeds the 50% of actual cash value limitation contained in the constitution even if that limitation is exceeded by reason of the operation of the state equalization factor. The failure of the petitioners to pursue an appeal of their assessments prior to the imposition of the state equalization factor does not preclude them from seeking review in the Tax Tribunal upon the imposition of the increased assessment. Only upon the imposition of the state equalization factor to their assessments did the question of whether their assessments exceeded the constitutional limitation become subject to the review process.

2. The county board of commissioners does not have the power to waive the collection of additional taxes payable to a school district arising out of increases in assessments due to state equalization. The statute permitting the waiver of such taxes is violative of the constitutional requirement that taxes be uniform.

Reversed.

1. Taxation — Real Property — Assessments — Uniformity of Assessments — Proofs.

A taxpayer claiming that the assessment of his real property is improper because of lack of uniformity must show that the ratio of assessed value to fair market value of his property is greater than the ratio of average assessed value to average fair market value in the taxing district in which the property is located.

2. Taxation — Real Property — Assessments — Excessive Assessment — Proofs.

A taxpayer claiming that the assessment of his real property is in excess of the constitutional limitation that assessments shall not exceed 50% of true cash value must show only that the assessed value exceeds 50% of the true cash value of the

property either before or after state equalization.

3. TAXATION — REAL PROPERTY — ASSESSMENTS — STATE TAX TRIBU-
NAL — STANDING TO SEEK REVIEW.

A taxpayer may challenge in the State Tax Tribunal the pro-
priety of his assessment after state equalization on the grounds
that the assessment after equalization exceeds the constitu-
tional limitation and is contrary to law, even though the
taxpayer had not sought review of his original tax assessment,
since it is only when the additional assessment resulting from
state equalization is effective that the taxpayer has a basis to
seek review of the propriety of the additional assessment.

4. TAXATION — REAL PROPERTY — ASSESSMENTS — STATE EQUALIZA-
TION — UNIFORMITY OF TAXATION — SCHOOL DISTRICTS —
STATUTES.

The statutory provision providing that a county board of commis-
sioners may, at its option, either spread an additional tax levy
resulting from state equalization on the next succeeding tax
roll or waive the payment of the same violates the constitu-
tional requirement of uniformity of taxation with respect to
school district taxes where the county board decides to waive
the imposition of the additional tax resulting from state equali-
zation; accordingly, a county board of commissioners may not
waive the spreading and collection of those additional taxes
payable to school districts by reason of an increase in valuation
resulting from state equalization (MCL 211.39a; MSA 7.80[1]).

*Hyman, Gurwin, Nachman, Friedman & Winkel-
man* (by *Thomas J. Beale*), for petitioners.

*Ross, Bruff & Henriksen,* for respondent.

Before: BEASLEY, P.J., and M. F. CAVANAGH and
W. A. PORTER,* JJ.

W. A. PORTER, J. Petitioners appeal as of right
from an order of the Michigan Tax Tribunal grant-
ing accelerated judgment and dismissing their pe-
titions.

Three properties are involved in this property

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tax dispute. Brittany Park Apartments and Brittany Park Apartments #2 are apartment developments in Harrison Township. Morton L. Scholnick, Robert Brody, Norman Gallant, et al., own a vacant parcel of land within that township's boundaries. On March 1, 1975, all petitioners were notified of their 1975 tax assessments and all subsequently inquired and learned that the tentative equalization factor for Harrison Township would be 1.0. Each of these taxpayers filed timely protests of their assessments with their local board of review, which denied relief. No further appeals were taken at that time.

In May of 1975, the State Board of Equalization, pursuant to MCL 209.4; MSA 7.604, increased the state equalization factor for Macomb County from 1.0 to 1.28254. Macomb County proceeded to levy taxes based on the tentative equalization factor of 1.0 but filed a petition for review, apparently erroneously, in the Tax Tribunal. See *Emmet County v State Tax Comm,* 397 Mich 550, 556; 244 NW2d 909 (1976). Petitioners paid the 1975 tax based on the 1.0 equalization factor.

On October 8, 1976, the Tax Tribunal dismissed Macomb County's appeal, thereby affirming the increase in the state's equalization factor. After the dismissal, the Macomb County Board of Commissioners, acting pursuant to the General Property Tax Act, § 39a,[1] determined not to levy any additional 1975 taxes. A number of school districts within the county brought suits to compel the levy of the additional taxes. On May 17, 1978, the Macomb County Circuit Court ordered the township, as statutory agent for the school districts, to levy the school district taxes in accordance with the state equalized value.

[1] MCL 211.39a(3); MSA 7.80(1).

In July of 1978, the township sent an additional tax bill to all taxpayers, including petitioners. These petitioners then filed protests with the Tax Tribunal, contending that: (1) the equalized value exceeded 50% of the true cash value, contrary to Const 1963, art 9, § 3, and the General Property Tax Act (hereinafter GPTA), § 27[2]; and (2) the tax levy in 1978 for the 1975 tax year violated the GPTA, § 34, as amended by 1975 PA 243.[3] The township filed a motion to dismiss and/or for accelerated judgment. The motion was granted, and the petition dismissed on two bases. First, the Tax Tribunal held that the individual taxpayers lacked standing to appeal with regard to state equalized value pursuant to MCL 209.7; MSA 7.607. The Tax Tribunal apparently viewed the taxpayers' petitions as appeals of the state equalization process rather than appeals of disputed assessments. Second, the Tax Tribunal held that the instant matter involved the 1975 tax year and therefore the 1975 amendment to GPTA, § 34, which for the first time prevented an increase in equalization from increasing total taxes levied, was not applicable.[4]

Petitioners now appeal, raising two issues. First, they contend the present statutory scheme, as interpreted by the Tax Tribunal, denies them due process of law when it effectively obviates their opportunity to show that their assessments exceed the constitutional limitation that assessments shall not exceed 50% of the property's actual cash value as a result of state equalization, because

---

[2] MCL 211.27; MSA 7.27.

[3] MCL 211.34; MSA 7.52.

[4] The proper motion with respect to this second basis would have been one for summary judgment. GCR 1963, 117.2(1). However, this mislabeling is not fatal in the absence of prejudice. *Butler v Wayne County Sheriff's Dep't*, 75 Mich App 202; 255 NW2d 7 (1977).

such scheme requires a taxpayer to appeal his assessment before he has notice of the effect of state equalization. Second, the petitioners argue that the three-year delay in the 1975 levy rendered their additional assessment void.

In examining petitioners' claims, it is necessary to examine the statutorily established timetable for assessment and a taxpayer's rights relative thereto. GPTA, § 24,[5] requires an assessor to prepare a township's annual assessment rolls by the first Monday in March. The supervisor or assessor shall give notice of an increase in assessment to the owners of property that has been assessed at higher value than in the previous year. This notice must be mailed not less than 10 days before the meeting of the local board of review. GPTA, § 24(c).[6] The local board of review meets on the Tuesday following the first Monday in March, at which time the roll is submitted and additions, deletions, and technical corrections are made. GPTA, § 29.[7] On the second Monday in March, the local board of review meets to hear protests from individual taxpayers disputing assessments. GPTA, § 30.[8] Time in which appeals may be brought will be described later.

The equalization process begins with the county equalization of the assessments of the political subdivisions within the county. The county boards of commissioners meet in April to determine each county's equalization value. GPTA, § 34.[9] If a county board of commissioners finds the property within one township or city has been assessed

5 MCL 211.24; MSA 7.24.
6 MCL 2.11.24c; MSA 7.24(3).
7 MCL 211.19; MSA 7.29.
8 MCL 211.30; MSA 7.30.
9 MCL 211.34; MSA 7.52.

relatively unequally vis-à-vis property in other townships or cities, the board shall add to or subtract from the value of the property in the city or township an amount that shall bring the proportion of true cash value to that required by law. GPTA, § 34.[10] Only a township, city or school district may appeal the determination of the county board of commissioners and such appeals are directed to the Michigan Tax Tribunal. GPTA, § 34,[11] Cooper Twp v State Tax Comm, 393 Mich 58; 222 NW2d 900 (1974).

The State Board of Equalization meets annually on the fourth Monday in May to hear the representatives of the several counties. MCL 209.4; MSA 7.604. The state board adjusts the assessed values of property by county so that property in each county is assessed at the same percentage of true cash value. Counties aggrieved by the determination of the state board may obtain judicial review of that decision. See Emmet County v State Tax Comm, supra.

The Michigan Constitution suggests that there are two circumstances in which a taxpayer may claim his assessment is illegal. Const 1963, art 9, § 3, requires that property assessments be uniform and not be in excess of 50% of true cash value:

"The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments."

[10] MCL 211.34; MSA 7.52.
[11] MCL 211.34; MSA 7.52.

GPTA, § 27,[12] also requires assessment of 50% of true cash value.

The Supreme Court has recognized a taxpayer's right to complain that his assessment was not made in uniformity with other assessments. *In re Appeal of General Motors Corp*, 376 Mich 373; 137 NW2d 161 (1965), *Titus v State Tax Comm*, 374 Mich 476; 132 NW2d 647 (1965). If the claim is based on lack of uniformity, the taxpayer must show that the ratio of assessed value to fair market value of his property is greater than the ratio of average assessed value to the average fair market value in the taxing district. A taxpayer also may claim that his assessment is in excess of 50% of the true cash value, in which case he need show only that his assessed value is greater than 50% of the fair market value. Such assessment may not be in excess of 50% of the true cash value either before or after the state equalization. *Consumers Power Co v Muskegon*, 13 Mich App 334; 164 NW2d 398 (1968). *DeWitt Twp v State Tax Comm*, 397 Mich 576, 579-580; 244 NW2d 920 (1976).

The Tax Tribunal Act, § 35,[13] effective July 1, 1974, required a taxpayer to appeal the final decision of a board of review within 30 days.

GPTA, § 34(a),[14] was amended by 1975 PA 188. That amendment gave a taxpayer disputing his assessment a direct appeal to the Tax Tribunal before the third Monday in August if the final equalization ratio exceeded the tentative equalization ratio and the taxpayer's assessment, after state equalization, was in excess of 50% of the true cash value.

The Michigan Supreme Court on August 27,

[12] MCL 211.27; MSA 7.27.
[13] MCL 205.735; MSA 7.650(35).
[14] MCL 211.34a; MSA 7.52(1).

1976, decided *DeWitt Twp v State Tax Comm,
supra.* DeWitt Township had filed an appeal based
upon the county's applying back to it a state
equalization factor of 1.10. The township had not
appealed from the original county equalization
factor of 1.0. GPTA, § 34,[15] which governs appeals
by townships aggrieved by the intra-county equali-
zation action of the board of commissioners, pro-
vided for an appeal within five days after adoption
of the equalization report. The Court held:

"Plaintiff township was not aggrieved by the action of
the board of commissioners in initially equalizing the
valuations of the several townships. Therefore, plaintiff
had no basis for appeal within the five-day period
provided by statute.

"When the equalization factor was raised by the
State Tax Commission to 1.10, after plaintiff already
had been assessed at 50% of true market value, the
township became aggrieved.

"We cannot conclude that the Legislature intended to
deprive a governmental unit in this situation of any
right to appeal.

"Instead we consider Clinton County's action after
the STC determination to be a new equalization within
the meaning of the statute. We find that the statutory
appeal period ran until five days after DeWitt Township
was notified by Clinton County that its assessment was
raised.

"In addition to the legal impediment, plaintiff-appel-
lant has a massive practical impediment. To protect
itself from discrimination under the terms proposed by
appellee would require it to be conversant with the tax
assessment procedures, methods and results not just
within its own township but within all of the other
taxing units in Clinton County. We cannot read the
legislative enactment to require such an obviously bur-
densome result." *DeWitt Twp, supra,* 579-580.

[15] MCL 211.34; MSA 7.52.

Petitioners herein find themselves in the same situation as did DeWitt Township. The taxpayers had no reason to appeal an assessment at 50% of true cash value with an equalization factor of 1.0. There was no assessment dispute to appeal until an increased factor was applied to the taxpayers after state equalization. Were the taxpayer required to appeal directly from the board of review determination, before a state equalization, he would face an even greater burden than the township. The only way a taxpayer, as a practical matter, knows that his assessment is too high is if it is over 50% of true cash value. As long as his initial assessment is 50% or less, he has no reason to anticipate that he is not being assessed uniformly and/or that his assessment will be raised to over 50% of true cash value by state equalization. In the absence of such a red flag, a taxpayer would have to make a private study of all of the other assessment values in the county and his relationship to them and would not be able to rely upon the township's determination.

Just as the Court in *DeWitt Twp, supra,* was unwilling to conclude that the Legislature intended to deprive a governmental unit in this situation of any right to appeal, we believe the Legislature did not intend to deprive a taxpayer of a right to appeal an assessment increased by state equalization where that increase allegedly causes the assessment to exceed 50% of true cash value of the property. Such interpretation is supported by subsequent legislative enactments.

1976 PA 365, which amended §§ 35 and 37 of the Tax Tribunal Act[16] and took immediate effect on December 22, 1976, was introduced September 13, 1976. 2 Michigan Senate J 1809 (1976). Section 35,

---

[16] MCL 205.735, 205.737; MSA 7.650(35), 7.650(37).

as amended, gave a taxpayer in an assessment dispute until June 30th to appeal a board of review decision on his protest in 1977 and thereafter. Section 37, as amended, described the tribunal's responsibility in determining an assessment dispute:

"(1) In arriving at its determination of a local property assessment, the tribunal shall determine the amount by multiplying its findings of true cash value by a percentage equal to the ratio of the average level of assessment in relation to true cash values in the assessment district.

"(2) The lawful assessment as determined by the tribunal shall be subject to equalization and shall be equalized by application of the equalization factor which is uniformly applicable in the assessment district for the year in question, which, after equalization, shall not exceed 50% of the true cash value of the property on the assessment date."

A comparison of the pre-amendment and post-amendment provisions reflects a legislative intent to allow a taxpayer to appeal his assessment when state equalization has raised the same to over 50% of true cash value. Prior to the 1976 amendment, § 35[17] required a taxpayer to appeal prior to the state equalization process. Prior to the 1976 amendment, § 37[18] provided that the lawful prop-

[17] "(2) The jurisdiction of the tribunal shall be invoked by the filing of a written petition by a party in interest, as petitioner, within 30 days after the final decision, ruling, determination, or order which he seeks to review * * *."

[18] "(1) In arriving at its determination of a lawful property assessment, the tribunal shall determine the amount by multiplying its finding of true cash value by a percentage equal to the ratio of the average level of assessment in relation to true cash values in the assessment district. The average level of assessment in the equalization district shall be taken from the equalization factor when the assessment of a property is being appealed. The lawful assessment shall be determined by applying to such amount the equalization factor which is uniformly applicable in the assessment district for the

erty assessment, as determined by the Tax Tribunal, was not to exceed 50% of true cash value after applying the equalization figure then uniformly applicable in the assessment district. That equalization figure would not reflect state equalization unless the tribunal's hearing was delayed until the state equalization process was completed. After the 1976 amendment, the taxpayer was given the opportunity to appeal after state equalization. Also, the Tax Tribunal's determination of the lawful property assessment could not exceed 50% of the true cash value after equalization, which would include the state equalization process.

Likewise, the introduction of the above amendments less than one month after the *DeWitt Twp* decision confirms our interpretation of the Legislature's intent. We conclude that the Legislature amended the statute with the knowledge of the *DeWitt Twp* decision and for the purpose of giving the taxpayer an unequivocal right to appeal an assessment raised over 50% of true cash value by the equalization process. *E F MacDonald Co v Dep't of Treasury,* 62 Mich App 626, 632; 233 NW2d 678 (1975), *General Motors Corp v Employment Security Comm,* 82 Mich App 99; 266 NW2d 470 (1978).

We therefore find that the appellant taxpayers had standing to petition the Tax Tribunal for a determination of the lawful property assessment applicable to their property under the circumstances of the instant case. We believe that a contrary interpretation may have due process and equal protection implications under both the Federal and state constitutions. See Part I of the opinion of Justice WILLIAMS in *DeWitt Twp, supra,* 578-579.

year in question. After applying the equalization factor the lawful assessment shall not exceed 50% of the true cash value of the property on the assessment date."

Petitioners now argue that, when the county failed to collect the additional tax in the next succeeding year, the county was forever barred from seeking that tax, citing GPTA, § 39(a).[19] The statute provides:

"(1) If the determination of the equalized value is delayed as a result of an appeal taken pursuant to this act and pending before the tax commission or the tax tribunal, the assessing officer shall levy taxes upon the equalized value of property as determined by the county board of commissioners which is being reviewed by the tax commission or tax tribunal. The payment of taxes thusly levied, hereinafter called the 'tentative levy', shall not constitute a final and ultimate discharge of the taxpayer's obligation except as provided in subsection (3).

\*     \*     \*

"(3) If such determination shows that additional taxes are due, the county board of commissioners *may spread* the additional levy upon the *next succeeding annual tax roll* and collect them together with the next succeeding annual taxes \* \* \* or declare the tentative levy the final levy." (Emphasis added.)

We initially note that a resolution by the board of commissioners not to spread an additional levy could only have resulted in the loss of revenue for the school districts for the tax year of 1975. GPTA, § 39(a),[20] as amended by 1972 PA 296, contained the word "shall", thereby requiring the spread of the additional levy. That provision was amended by 1974 PA 384, § 39(a), effective December 23, 1974, which gave the county board of commissioners the option to spread the additional levy by changing the word "shall" to "may". On August 1, 1975, the Legislature received OAG, 1975-1976, No

[19] MCL 211.39a; MSA 7.80(1).
[20] MCL 211.39a; MSA 7.80(1).

4812, p 118 (August 1, 1975) advising it that notwithstanding the word "may" in the above amendment, the controlling constitutional uniformity provision required the spreading of the additional levy. The Legislature reacted by enacting 1975 PA 243 which amended GPTA, § 34, immediately effective on September 4, 1975. The amended language provided in pertinent part:

"Each year the county board shall advise the local taxing units when the state tax commission increases the equalized value of the county as established by the board of county commissioners and each taxing unit other than a school district, intermediate school district, or community college district, shall immediately reduce its millage rate so that subsequent to the increase ordered by the state tax commission pursuant to Act No. 44 of the Public Acts of 1911, as amended, being sections 209.1 to 209.8 of the Michigan Compiled Laws, total property taxes levied shall not exceed that which would have been levied if there had been no increase in valuation by the state * * *.

* * *

"Section 2. This act shall take effect commencing with the 1976 tax year."

Thus, prior to the 1974 amendment, the respective school districts received their share of tax revenue based upon the state equalized value, because the entire tax increase occasioned by an increase in state equalization was required to be spread and collected in the next year. After the 1974 amendment and prior to January 1, 1976, the school districts would only receive their full share of tax revenue after an increase because of state equalization if the county board of commissioners decided to spread the additional levy back. Subsequent to this period, school districts received their full share of revenue based upon a state equaliza-

tion increase because taxing units other than school districts were required to reduce their millage, and therefore tax revenue, by an amount which would make the total taxes levied the same as would have been levied if there had been no state equalization increase. However, as indicated, during this interim period there was no statutory framework assuring school districts their full share of revenue based upon an increased state equalized value.

The constitutional rule of uniformity of taxation applies to governmental units as well as individual taxpayers, *Allied Supermarkets, Inc v Detroit,* 391 Mich 460; 216 NW2d 755 (1974), *Ann Arbor Twp v State Tax Comm,* 393 Mich 682; 227 NW2d 784 (1975), *In re Appeal of General Motors Corp,* 376 Mich 373; 137 NW2d 161 (1965), and is designed to be achieved by the equalization process, *Ann Arbor Twp, supra.*

As Justice WILLIAMS pointed out in his dissenting opinion in *Emmet County, supra,* 565-569, the state equalization process is made necessary largely because several legislative formulas for computing state aid are based upon the taxing effort of the various taxing districts. If a taxing authority, such as a county, were allowed to waive the collection of an increase in tax based upon the state equalization process, the taxpayers in those districts would receive state aid in a disproportionately and unintendedly higher amount than elsewhere in the state. This would thwart the purpose of state equalization and the uniformity provisions of the constitution.

We conclude that the language of 1974 PA 384, § 39a(3), permitting a county to waive the collection of the additional levy for the tax year 1975 only, violates the uniformity rule. Michigan Const

1963, art 9, § 3. Also see OAG, 1975-1976, No 4812, *supra*. The county could not waive the spreading and collection of the various school districts' shares of additional taxes occasioned by an increase in state equalization.

Accelerated judgment is reversed. No costs, a public question being involved.