## EMMET COUNTY v STATE TAX COMMISSION

Docket Nos. 56092, 56107, 56266, 56267, 56502. Argued December 3, 1975 (Calendar Nos. 1-5).—Decided August 27, 1976.

Emmet, Saginaw, Kalamazoo, and Washtenaw Counties and the taxing units of Washtenaw County appeal by leave granted from the 1974 determination of state equalized valuation (and in two cases the 1973 determination) by the State Tax Commission. The Court of Appeals had decided adversely to appellants Saginaw and Kalamazoo Counties as to the 1973 equalization in *Saginaw County v State Tax Commission,* 54 Mich App 160 (1974), and denied leave to appeal to all appellants as to the 1974 equalization. *Held:*

1. The Tax Tribunal has jurisdiction over matters previously heard by the State Tax Commission sitting as an appellate body. Appeals from intracounty equalization by Boards of Commissioners were formerly reviewable by the State Tax Commission and now may be reviewed by the Tax Tribunal.

2. The Tax Tribunal Act, however, does not authorize the tribunal to assume jurisdiction over state (intercounty) equalized valuation, which is not an appellate proceeding and has never been subject to administrative review. The "equalization" subject to the Tax Tribunal's jurisdiction is the very same equalization that historically and statutorily has been reviewed by the State Tax Commission. If a county believes itself aggrieved by a determination of the State Tax Commission concerning intercounty equalization, it may seek judicial review asserting fraud or error of law.

3. The provisions of the Administrative Procedures Act do not apply to intercounty equalization proceedings before the State Tax Commission. The question is one of legislative intent: it is most unlikely that the Legislature intended to make one long-established statutory system unworkable by imposing another procedure upon it. The language of the Administrative

REFERENCES FOR POINTS IN HEADNOTES

[1–8] 71 Am Jur 2d, State and Local Taxation § 144 *et seq.*

Permissible limits of delegation of legislative power. 79 L Ed 474.

[4–8] 2 Am Jur 2d, Administrative Law § 571 *et seq.*

Procedures Act does not require such a result, because state equalization proceedings are not a "contested case" while they are before the State Tax Commission. The Legislature did not exempt state equalization proceedings from the Administrative Procedures Act because no appeal to an administrative agency was contemplated and the exemption would have been meaningless.

Justice Williams, Justice Lindemer concurring, dissented. He would hold that:

1. The provisions of the Administrative Procedures Act must be followed by the State Tax Commission in performing intercounty equalization, by which the state equalized valuation is determined. This holding would be made applicable to equalization for 1977 and after to permit any necessary adjustments in the present practice and to permit the Legislature to make any changes it deems advisable.

2. Intercounty equalization by the State Tax Commission is subject to direct review by the Tax Tribunal. This holding would be made applicable to equalization for 1977 and after except for the instant cases for similar reasons.

54 Mich App 160; 220 NW2d 706 (1974) affirmed.

OPINION OF THE COURT

1. TAXATION—TAX TRIBUNAL—JURISDICTION.

The Legislature vested jurisdiction in the Tax Tribunal over matters previously heard by the State Tax Commission sitting as an appellate body; the Tax Tribunal now stands in the stead of the State Tax Commission as a reviewing body (MCL 205.741; MSA 7.650[41]).

2. TAXATION—TAX TRIBUNAL—JURISDICTION—INTRACOUNTY EQUALIZATION.

Appeals from intracounty equalization by Boards of Commissioners and other property tax matters which were formerly reviewable by the State Tax Commission are now reviewed by the Tax Tribunal (MCL 205.731, 205.741; MSA 7.650[31], 7.650[41]).

3. TAXATION—TAX TRIBUNAL—JURISDICTION—INTERCOUNTY EQUALIZATION.

The Tax Tribunal Act does not authorize the Tax Tribunal to assume appellate jurisdiction over state equalization of the 83 counties, which has never been subject to administrative review.

4. TAXATION—INTERCOUNTY EQUALIZATION—REVIEW—COURTS.

A county which believes itself aggrieved by the determination of the State Tax Commission concerning intercounty equalization may seek judicial review in the case of fraud or error of law.

5. TAXATION—INTERCOUNTY EQUALIZATION—ADMINISTRATIVE PROCEDURES ACT.

The provisions of the Administrative Procedures Act do not apply to intercounty equalization proceedings before the State Tax Commission; the Legislature did not intend to make one long-established statutory system unworkable by imposing another procedure upon it (MCL 209.1 *et seq.*, 24.201 *et seq.;* MSA 7.601 *et seq.*, 3.560[101] *et seq.*).

6. TAXATION—INTERCOUNTY EQUALIZATION—ADMINISTRATIVE PROCEDURES ACT.

The Legislature did not exempt intercounty equalization proceedings before the State Tax Commission from the Administrative Procedures Act because administrative review of the proceedings was not contemplated and the exemption would have been meaningless (MCL 209.1 *et seq.*, 24.201 *et seq.;* MSA 7.601 *et seq.*, 3.560[101] *et seq.*).

DISSENTING OPINION

WILLIAMS and LINDEMER, JJ.

7. TAXATION—TAX TRIBUNAL—JURISDICTION—INTERCOUNTY EQUALIZATION.

*Jurisdiction conferred by statute on the Tax Tribunal to review equalization under property tax laws includes review of intercounty equalization by the State Tax Commission, by which the state equalized valuation of each county is established (MCL 205.731; MSA 7.650[31]).*

8. TAXATION—INTERCOUNTY EQUALIZATION—STATE TAX COMMISSION—ADMINISTRATIVE PROCEDURES ACT.

*Intercounty equalization proceedings before the State Tax Commission to determine the state equalized valuation of each county fit within the statutory definition of a "contested case", and because they are not specifically controlled by another statute or constitutional provision; the State Tax Commission must follow the Administrative Procedures Act in such proceedings (MCL 24.201 et seq.; MSA 3.560[101] et seq.).*

*Bauckham, Reed, Lang & Schaefer* for Emmet County.

*Donald A. Burge,* Prosecuting Attorney (by *Duane T. Triemstra),* for Kalamazoo County.

*Smith & Bovill, P. C.,* for Saginaw County.

*Robert E. Guenzel* for Washtenaw County.

*John L. Etter* for City of Ypsilanti and 19 townships of Washtenaw County.

*Allan W. Grossman* for City of Saline.

*R. Bruce Laidlaw* for City of Ann Arbor.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Lawrence W. Morgan,* Assistants Attorney General, for defendant.

KAVANAGH, C. J.

I.

Plaintiffs urge that these cases be remanded to the Tax Tribunal for proceedings to challenge the State Tax Commission's intercounty equalization determination. Defendant, however, contends that the Tax Tribunal has no reviewing authority over intercounty equalization.

On July 1, 1974 the Tax Tribunal was established pursuant to provisions of the Tax Tribunal Act, 1973 PA 186; MCLA 205.701 *et seq.;* MSA 7.650(1) *et seq.* Section 31 of the Tax Tribunal Act, MCLA 205.731; MSA 7.650(31), confers upon the tribunal the exclusive and original jurisdiction to review assessment, valuation, rates, special assess-

ments, allocation disputes, and, *inter alia,* equalization, under property tax laws. Section 41 of the same act, MCLA 205.741; MSA 7.650(41), endows the tribunal with jurisdiction over actions which were heretofore reviewable by the State Tax Commission or by a circuit court. Section 31 and § 41 of the Tax Tribunal Act transfer the tax commission's former appellate jurisdiction over county equalization appeals to the Tax Tribunal. Clearly, appeals from intracounty equalization by Boards of Commissioners were formerly reviewable by the State Tax Commission and can and will be reviewed by the Tax Tribunal. *Cooper Township v State Tax Commission,* 393 Mich 58; 222 NW2d 900 (1974).

Intracounty equalization appeals satisfy the conditions of both § 31 and § 41 of the Tax Tribunal Act, *i.e.,* they are equalization matters arising under the property tax laws and they are matters formerly appealable to the State Tax Commission.

However, it is equally clear that the Tax Tribunal Act does not contemplate nor authorize the tribunal to assume jurisdiction over state equalization.

The laws of this state, since 1913 PA 201, have provided an appeal of intracounty equalization to a state body (the Board of State Tax Commissioners, which was the progenitor of the State Tax Commission), whereas there never has been any provision for administrative review of *state equalization* of the 83 counties. Also, the Legislature provided by 1972 PA 296 for a tentative levy of taxes during the pendency of a county equalization appeal before the Tax Commission, with a final levy subsequent to resolution of the appeal, whereas it never has enacted legislation dealing with the levy of ad valorem taxes during the time of controversion of state equalized values.

These actions of the Legislature deliberately retain the clear distinction between county equalization and state equalization. They also reveal legislative recognition of the need for review of intracounty equalization and the concomitant need for precluding administrative review of state equalization.

In § 41 of the Tax Tribunal Act, the Legislature made it clear that it was vesting jurisdiction in the Tax Tribunal over matters previously heard by the State Tax Commission as an *appellate* body. Formerly, the State Tax Commission was the appellate body over individual assessments, allocation disputes and *intracounty equalization matters.* The State Tax Commission did not act as an appellate body over *state* equalization. Section 41 does not limit the jurisdiction of the tribunal as conferred by § 31, but is in fact entirely consistent with § 31. Section 31 places jurisdiction in the Tax Tribunal over those matters arising under the property tax laws and, consistent therewith, § 41 eliminates the tax commission and the circuit court as forums in which those very matters were formerly litigated. In the context of *this* case, § 31 gives the Tax Tribunal jurisdiction over *county* equalization appeals and § 41 eliminates the tax commission as the forum for its review. The "equalization" subject to the Tax Tribunal's jurisdiction is the very same equalization that historically and statutorily had been reviewed by the State Tax Commission. The Tax Tribunal succeeded to that jurisdiction as it succeeded to the other appellate jurisdictions of the tax commission.

In short, the Tax Tribunal now stands in the stead of the tax commission as a reviewing body; it has not become the reviewer of tax commission action in intercounty equalization.

If a county believes itself aggrieved by the determination of the State Tax Commission concerning intercounty equalization, it may seek judicial review asserting fraud or error of law.

## II.

The provisions of the Administrative Procedures Act, MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.* (APA), do not apply to intercounty equalization proceedings before the State Tax Commission.

Plaintiffs and the minority opinion herein rely on this Court's recent opinion in *Cooper Township v State Tax Commission,* 393 Mich 58; 222 NW2d 900 (1974), as authority for requiring the State Tax Commission to operate in accordance with th APA provisions.

*Cooper Township, supra,* and *Ann Arbor Township v State Tax Commission,* 393 Mich 682; 227 NW2d 784 (1975), both dealt with *intra*county equalization. What we deal with in the instant case is intercounty equalization, a very different situation. The intercounty equalization process is replete with statutory deadlines, among which are the following:

(a) MCLA 211.34; MSA 7.52 requires that the county commissioners equalize their respective counties during the April session.

(b) MCLA 209.5; MSA 7.605 orders the county commissioners to forward their tabular statements (equalization reports) to the State Tax Commission by the first Monday in May.

(c) MCLA 209.2; MSA 7.602 orders the State Board of Equalization to convene on the second Monday in May to equalize assessments.

(d) MCLA 209.4; MSA 7.604, requires the board to prepare a tabular statement showing, by coun-

ties, the total assessed valuation, the valuation as equalized by the commissioners, the previous year's state equalized valuation, and current year's recommended values. These figures must be forwarded to the county clerks. In addition to providing for the tabular statement described above, it provides for the State Board of Equalization to remain in session and finally conclude state equalization on the fourth Monday in May. Representatives of the several counties are heard on the fourth Monday in May, at which time the board determines the relative valuation of the 83 counties and adds to or deducts from the assessed values presented to it a sum which produces 50% of true cash value.

Despite these limitations, plaintiffs assert, and the minority opinion agrees, that state equalization must be conducted pursuant to the requirements of the Administrative Procedures Act which would conceivably require introduction into evidence of approximately 162,492 pages of record for 1974, and 70,000 pages for 1973, allow for the cross-examination of approximately 75 employees of the State Tax Commission, and allow counsel for 83 counties to submit and resubmit proposed findings of fact and conclusions of law. Presumably, the State Tax Commission, the adversary party according to plaintiffs, would have a right to review the evidence of the 83 counties, and cross-examine the county commissioners, or the equalization director of each county.

This procedure would make it virtually impossible to comply with the statutory deadlines, and would impede the apportionment and collection of taxes necessary to numerous state support programs.

We are dealing with a question of legislative

intent. If it considered this problem, it is most unlikely that the Legislature intended to make one long-established statutory system unworkable by imposing another procedure upon it.

The language of the APA does not require the minority's result. The act refers to a "contested case". Who are the contestants in state equalization proceedings? Apparently, the argument is that they are the counties and the State Tax Commission. While they may become adversaries in subsequent litigation in the Court of Appeals or this Court, it stretches the concept of a "contested case" to denominate the commission an adversary during a proceeding before it.

This situation again contrasts with that of intracounty equalization present in *Cooper Township,* where we recognized that "the township and the county become the adversary parties in an equalization hearing held before the State Tax Commission". 393 Mich 58, 70, n 3.

In *Fisher-New Center Co v State Tax Commission,* 381 Mich 713; 167 NW2d 263 (1969), we held that individual taxpayer appeals are contested cases within the APA. The Legislature then passed 1969 PA 270, which exempted State Tax Commission proceedings from the APA contested case provisions. In *Cooper Township, supra,* we held that statute did not apply to intracounty equalization matters because the Legislature did not amend the *county* equalization statute, MCLA 211.34; MSA 7.52, as it did the individual assessment statute, MCLA 211.152; MSA 7.210. It does not follow, however, that such analysis requires us to apply the APA to intercounty equalization. There has never been a right of appeal to an administrative agency from intercounty equalization. Therefore, it would be a meaningless gesture

for the Legislature to declare that the APA does not apply to a nonexistent proceeding. We hold that the APA does not apply to intercounty equalization proceedings before the State Tax Commission.

LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with KAVANAGH, C. J.

RYAN, J., took no part in the decision of this case.

WILLIAMS, J. *(dissenting)*. In *Cooper Twp v State Tax Commission,* 393 Mich 58; 222 NW2d 900 (1974), and *Ann Arbor Twp v State Tax Commission,* 393 Mich 682; 227 NW2d 784 (1975), this Court had occasion to examine and construe legislative enactments relating to *intra*county equalization. The instant appeals call upon this Court to similarly construe legislative enactments as they relate to *inter*county equalization.

Specifically, we are asked whether the provisions of the Administrative Procedures Act (APA)[1] must be followed by the State Tax Commission (STC) in performing intercounty equalization and whether the Tax Tribunal has jurisdiction for direct review of intercounty equalization determinations by the STC. We answer both questions affirmatively.[2]

I—FACTS

Each year the property tax assessment process begins anew. The first step takes place at the township, village or city level where local assess-

[1] MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.*

[2] Since plaintiffs have prevailed on both these issues we need not examine plaintiffs' alternate argument that § 86 of the Executive Reorganization Act of 1965 is in contravention of Const 1963, art 4, § 25.

ing officers are required to assess property located within the community. The general property tax law, § 27,[3] provides that property "shall be assessed at 50% of its true cash value" and that in determining the "cash value" the assessing officer must ascertain the price which the property would bring considering such factors as:

"the advantages and disadvantages of location, quality of soil, zoning, existing use, present economic income of structures, including farm structures and present economic income of land when the land is being farmed or otherwise put to income producing use, quantity and value of standing timber, water power and privileges, mines, minerals, quarries, or other valuable deposits known to be available therein and their value." MCLA 211.27; MSA 7.27.

Upon completing his task, the assessing officer submits the property assessment rolls to the local taxing unit's Board of Review.[4] The board is charged with correcting any errors found in the assessment roll. Individual property owners may challenge and seek review of the assessed valuation of their property as determined by the assessing officer and also by the board of review.

After review, correction and adoption by the local boards of review, the assessment rolls are transmitted to the County Board of Commissioners. The commissioners in each county meet in April to examine the various assessment rolls to determine whether taxing units located within the county have equally and uniformly assessed property at 50% of its true value.

The commissioners, upon discovering unequal

[3] MCLA 211.27; MSA 7.27.
[4] MCLA 211.29; MSA 7.29.

assessments, are empowered to equalize assessments among the respective taxing units by adding to or deducting from the valuation of the taxable property of the local unit to produce the sum which reflects the proper proportion of true cash value required by law.[5] It is this process which is commonly referred to as *intra*county or county equalization.

Upon completion of intracounty equalization, the assessment rolls are forwarded to the State Tax Commission which is required by statute to meet in Lansing commencing the second Monday in May for the purpose of equalizing the assessment rolls of each of the 83 counties.[6] Initially, the STC prepares what is called preliminary findings and sends out to each county a recommended equalized valuation. The fourth Monday in May is reserved for hearings before the STC where county representatives may challenge the primary findings. Something in the nature of ten minutes is given to each representative to present the county's case. When the hearings are completed, the STC determines what further adjustments, if any, are appropriate and files the final state equalized value (SEV). In 1973 and 1974 the final decisions were rendered on the day of the hearing.

The SEV of the assessed property is relevant in computing the amount of school and welfare aid provided by the state as well as in determining a community's entitlement to revenue-sharing

---

[5] MCLA 211.34; MSA 7.52. To assist the commissioners in their task, the Legislature created the County Equalization Department which provides staff services and has the authority to survey property assessments.

[6] MCLA 209.2; MSA 7.602. Prior to 1965 the state board of equalization was responsible for inter-county equalization. This responsibility was transferred to the STC effective July 23, 1965. MCLA 16.186; MSA 3.29(86).

funds.[7] The assessment rolls, as equalized by the STC, eventually become the tax rolls upon which local taxes are levied.

In this case, the appeals now before us arose from determinations made by the STC during the May, 1973 and May, 1974 intercounty equalization process. Appeals were taken to the Court of Appeals.[8] The Court granted leave with regard to the

───────

[7] The state school aid formula will be examined in detail. See Section IIa of this opinion.

The allocation and distribution of welfare funds is provided for under § 18 of the Social Welfare Act which reads in pertinent part:

"The commission shall provide for distribution of such moneys as shall be appropriated * * * with reference to the following facts:

"(a) Need for relief as demonstrated by experience of the respective counties.

"(b) The financial resources of the respective counties. Funds distributed shall be in respect to the net amount expended monthly by the respective departments, for general public relief. State funds distributed shall be not less than 40% of the net amount spent by such department for general relief. Whenever any county, district or city department share of general relief expenditures equals 1 mill of the state equalized valuation, the state shall distribute funds for 100% of the general relief costs in excess of 1 mill." MCLA 400.18; MSA 16.418.

Section 14 of the Revenue Sharing Act, MCLA 141.914; MSA 5.3194(414), provides that computation of certain revenue sharing funds shall be in accordance with the "tax effort formula". In § 5 of the act, the tax effort formula is said to mean:

"the method for computing, from the total amount of revenue available for distribution under such formula at any single time, the amount to be paid to a city, village or township by:

"(a) Multiplying the *city, village or township relative tax effort* by its population.

"(b) Dividing the total amount of revenue available for distribution under such formula at any single time by the sum of the products from (a).

"(c) Multiplying the quotient from (b) by the individual products from (a) for each city, village or township." (Emphasis added.)

Section 5(1) states that:

" 'Local tax effort rate' for a city, village or township means its local taxes divided by its state equalized value." MCLA 141.905; MSA 5.3194(405).

See also MCLA 141.914; MSA 5.3194(414) and MCLA 141.906; MSA 5.3194(406) (tax burden formula).

[8] At the time appeals were taken from the STC 1973 and 1974 determination, the Tax Tribunal was not in existence.

Since this case is primarily concerned with resolving procedural

1973 equalization determinations but ruled against the counties. 54 Mich App 160. The Court of Appeals, citing its decision covering the 1973 appeals, denied leave in those cases challenging the 1974 determinations.

This Court initially granted leave and *sua sponte* vacated the order of the STC for failure to proceed in accordance with the APA and remanded the cause to the Tax Tribunal, 393 Mich 772, 776, 779 (1975). On motion for reconsideration we vacated our earlier order and scheduled the instant appeals for oral arguments. 393 Mich 815–818 (1975).

## II—IMPACT OF EQUALIZATION

Each of the instant appeals is bottomed on a challenge to State Equalized Value of property as set by the STC for each of the counties involved. Before resolving the legal issues raised by the parties, it would be prudent to examine why the state equalization process is of such vital importance. Any increase to or deduction from the assessment rolls of a county affects both the amount of local taxes levied upon individual property owners and the amount of state aid and revenue sharing funds received by a local community.

In order to fully appreciate the impact of intercounty equalization on the amount of taxes levied, it is necessary first to understand the effect intercounty equalization has on state aid. For purposes of our discussion we will focus our inquiry on the impact of equalization on state school aid.

questions associated with inter-county equalization, it is not necessary to delve into the substantive matters which occasioned this appeal.

## A. State Aid

Under the formula devised by the Legislature,[9] state school aid is payable within certain limits at a rate proportional to a given school district's taxing effort (millage level), but inversely proportional to the assessed value of the property located within the school district.[10]

---

[9] Section 21 of the School District Equalization Act provides in pertinent part:

"(1) Except as otherwise provided in this act, from the amount appropriated in section 11 there is allocated to every district an amount per membership pupil to be computed by subtracting, from $42,400.00 in 1975-76, the district's state equalized valuation behind each membership pupil and then multiplying the resulting difference by the tax levied for purposes included in the operation cost of the district as defined in section 582 of the school code of 1955, as amended, being section 340.582 of the Michigan Compiled Laws, but not in excess of 20 mills. A district levying more than 20 mills for operating purposes shall be allocated, in addition, an amount per membership pupil to be computed by subtracting, from $38,250.00 in 1975-76, the district's state equalized valuation behind each membership pupil and then multiplying the resulting difference by the tax levied in excess of 20 mills but not in excess of 27 mills in 1975-76." MCLA 388.1121; MSA 15.1919(521).

The statutory formula can be translated into the following equations:

1. Districts levying up to 20 mills

Equation A power equalization figure ($42,400) — state equalized value (SEV) per pupil $\times$ millage rate = state aid per pupil*

2. Districts levying more than 20 mills

On first 20 mills levied equation A is used. On the millage levied in excess of 20 mills (but not more than 27 mills) the formula would be as follows:

Equation B power equalization figure ($38,250) — SEV per pupil $\times$ millage in excess of 20 mills = state aid per pupil

The totals of equations A and B are added together to give the total aid.*

*Note that under the last clause of § 21 all allocations are reduced by:

"0.6 of 1% of the sum determined by adding the state aid payment under this section and the total property taxes levied for school operating purposes. Reductions authorized in this section shall be a reduction to the sum of all state aid received under this act."

[10] Using hypothetical school districts levying not more than 20 mills, consider the following hypotheticals by way of example:

The importance of fair and uniform equalization to the proper distribution of school aid is evident. If property located within a given county is assessed at less than 50% of its true value, the school district located in that county stands in most instances to receive more state aid than it would if the property was properly assessed.[11]

Example A (taxing effort).

$ 42,400 (Power equalization figure)
—20,000 (SEV per pupil)

22,400
× 0.015

$336.00  (state aid per pupil)

But if the school district *increases* its millage (taxing effort) the state aid per pupil will *increase:*

$ 42,400 (PEF)
—20,000 (SEV)

22,400
× 0.020 (millage levied)

$448.00  (state aid per pupil)

Example B (state equalized value).

$ 42,400 (PEF)
—20,000 (SEV per pupil)

22,400
× 0.020 (millage)

$448.00  (state aid per pupil)

However, if the state equalized value within the school district *increases* the amount of state school aid for that school district will *decrease.*

$ 42,400 (PEF)
—30,000 (SEV per pupil)

12,400
× 0.020 (millage)

$248.00  (state aid per pupil).

[11] Consider the following hypothetical examples where property located in school district has been under-assessed by 20%:

Example A.

$ 42,400 (PEF)
—20,000 (incorrect SEV per pupil)

22,400
× 0.020 (millage)

$448.00  (state aid per pupil)

School districts in counties encompassing taxing units which in good faith assess at 50% are in effect penalized for the diligence of the taxing units. The result of this under-evaluation is not only that a district receives more than its fair share, but also the state pays out more total funds, further taxing the state's fiscal resources.

The reverse of course is also true. If the STC's equalized valuation of property is too high, the school district stands to lose vital state aid to which it is rightfully entitled.

## B. Increased Property Taxes

The second effect of an increase or decrease in the state equalized value is on the size of the tax bill sent to the individual taxpayer. Past experience has demonstrated that if the assessment goes up as a result of intercounty equalization the millage rate remains the same and the end result is that more money is taken from the pockets of the taxpayer.

At oral argument considerable discussion was devoted to the question whether higher taxes could be avoided by simply reducing the millage to offset

---

Example B.

$ 42,000 (PEF)
−25,000 (correct SEV per pupil)

17,400
× 0.020 (millage)

$348.00 (difference—$100.00 per pupil).

Fluctuations in the SEV will be of no consequence to some school districts with regard to state school aid. Those school districts in which the SEV per pupil exceeds the power equalization figure are not entitled to state school aid. According to the Michigan Department of Education's Bulletin 10–12 only 42 of 530 school districts fell in this category during 1974–75. For some of these 42 districts intercounty equalization could be important. If the STC has erroneously set the SEV too high, a school district whose SEV per pupil is shown as exceeding the power equalization figure may be deprived of state school aid to which it is rightfully entitled because its SEV per pupil should actually be shown as less than the power equalization figure.

the impact of higher assessments. Adjusting the millage, at first glance, appears to be a rather simple means of avoiding tax increases. In fact 1975 PA 243 now *requires* that taxing units other than school districts, intermediate school districts and community college districts "reduce their millage rate so that subsequent to the increase ordered by the state tax commission * * * [the] total property taxes levied shall not exceed that which would have been levied if there had been no increase in valuation by the state".[12]

However, the exclusion of school districts from the requirements of this act is highly significant. Taxes levied for schools make up a substantial portion of an individual property owner's tax bill. For example, among those counties party to the instant proceeding, over two-thirds of the millage levied was school millage.[13]

Thus, a significant portion of the taxes levied are unaffected by the mandatory requirements of 1975 PA 243. School districts are not required to reduce their millage and practical considerations prevent them from reducing the school millage voluntarily. Consequently, despite 1975 PA 243, an individual's property taxes will increase when STC during intercounty equalization increases the value of a county's assessment roll.

---

[12] MCLA 211.34; MSA 7.52.

[13] Figures for 1974* show the following:

| | Total Taxes Levied | School Taxes Levied | Ratio (%) |
|---|---|---|---|
| Emmet County | $ 7,262,978.99 | $ 5,331,579.32 | 73.74 |
| Kalamazoo County | 62,396,877.63 | 44,621,340.48 | 71.75 |
| Saginaw County | 61,263,005.32 | 44,612,830.53 | 72.82 |
| Washtenaw County | 98,471,246.80 | 67,623,059.14 | 68.67 |

*Based upon report published by the State Tax Commission March 17, 1975.

However, it should be noted here that not all of the school taxes levied are for operational costs and consequently do not figure in the compilation of state school aid.

There is a fairly basic reason why school districts cannot reduce their millage to offset property assessment increases resulting from intercounty equalization. As was discussed above, an increase in the equalization value of property in the district usually results in a corresponding reduction in state school aid. In order to insure that adequate funds are available to keep the school district operational, the loss of state school aid resulting from valuation increases would have to be offset by higher property taxes. The school district would at least have to keep millage at its current level.

Furthermore, if school districts did reduce their millage as it has been suggested to offset effect of increased assessment upon the taxpayer, the result would be that the amount of state aid received would be further reduced. This is because state school aid is based not only upon taxability (property tax base) but taxing effort (millage rate). Under the formula contained in § 21 of the School District Equalization Act as the millage is reduced the amount of school aid declines.[14]

Thus, despite the Legislature's efforts to ease the burden placed upon the individual taxpayer resulting from increases in assessments ordered by the STC, this state's taxpayers may be adversely affected by the intercounty equalization process.

In school districts located in more than one county, the lack of uniform equalization adds another dimension to the taxpayer's dilemma. If County A is equalized at 50% assessed value but

---

[14] *See* example B in fn 9 of this opinion. Of course for school districts levying over 27 mills this will not always be true. For example, if the millage reduction was from 30 to 28 there would be no change in state school aid because aid is available only on the first 27 mills levied. Taxes levied in excess of 27 mills do not further increase the amount of school aid.

County B is only at 40%, taxpayers in County A
are paying more than their proportional share for
the operation of the school district.

### III—TAX TRIBUNAL

In 1973 the Tax Tribunal was created to review
agency decisions relating to property tax matters.[15]
The Legislature provided that:

"The tribunal's exclusive and original jurisdiction
shall be:
"(a) A proceeding for direct review of a final decision,
finding, ruling, determination, or order of an agency
relating to assessment, valuation, rates, special assess-
ments, allocation, or *equalization,* under property tax
laws.
"(b) A proceeding for refund or redetermination of a
tax under the property tax laws." (Emphasis added.)
MCLA 205.731; MSA 7.650(31).

No one seriously contends that the STC is not
an "agency" within the meaning of the act and as
the statutory language specifically includes within
the tribunal's jurisdiction review of decisions relat-
ing to equalization, it appears that the Legislature
intended that the tribunal would have the author-
ity to review intercounty equalization determina-
tions rendered by the State Tax Commission. In
*Cooper Twp v State Tax Commission, supra,* and
*Ann Arbor Twp v State Tax Commission, supra,*
this Court recognized that Tax Tribunal has juris-
diction to review intracounty equalization.
    However, the Attorney General, despite the ap-
parently clear language of the act and our deci-
sions in *Cooper* and *Ann Arbor,* strenuously main-

---

[15] MCLA 205.701 *et seq.;* MSA 7.650(1) *et seq.*

tains that intercounty equalization is not subject to review by the Tax Tribunal.

He cites to that portion of § 31 which limits the Tribunal's jurisdiction to "equalization, under the property tax laws". Since intercounty equalization is performed pursuant to the state board of equalization act,[16] intercounty equalization, he argues, is not technically performed "under the property tax laws" and consequently is outside the tribunal's jurisdiction.

Such an argument erroneously attempts to equate the language "property tax laws" contained in § 31 with the general property tax law, 1893 PA 206.[17] The language "property tax laws" is plural. It is descriptive of those laws concerned with property tax assessment, valuation, rates, special assessments, allocation and equalization, and certainly included within its meaning the state board of equalization act.[18] Had the Legislature intended the Tax Tribunal to have jurisdiction only over equalization conducted under the general property tax law (intracounty equalization) it easily could have so provided. But it did not. Rather, it spoke of "laws".

While the Attorney General concedes that an interchange between the methodology, statistics

---

[16] MCLA 209.1 *et seq.;* MSA 7.601 *et seq.*

[17] MCLA 211.1 *et seq.;* MSA 7.1 *et seq.*

[18] The latter portion of Const 1963, art 6, § 28 which limits judicial review of tax proceedings uses the language "property tax laws". In pertinent part § 28 reads:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of *property tax laws* from any decision relating to valuation or allocation." (Emphasis added.)

If we adopted the Attorney General's interpretation of "property tax laws", it could be argued with equal force that this portion, art 6, § 28, does not apply to intercounty equalization because this type of equalization is performed pursuant to the state board of equalization act.

and ultimate goal of intracounty and intercounty equalization exists, he argues that the two types of equalization are different and the Legislature intended that they be treated differently.[19] We cannot accept this proposition. Not only is there an interchange between intracounty and intercounty equalization, but both are part of one continuing process which begins at the first of the year with assessments at the local level and continues right on through intercounty equalization.

At each step in the assessment/equalization process, determinations of a highly complex and technical nature are made. The desirability for some type of review or check at each step is evident. At the intermediate levels (local assessment through intracounty equalization), such review is available. It would be inconsistent to permit review at these lower levels but deny review of decisions at the final level (intercounty equalization) where the inequities could well be the greatest. Absent a clear mandate from the Legislature, we will not attribute to them such an intent. The Tax Tribunal Act empowers the tribunal to review intercounty equalization. Accordingly, this matter is remanded to the Tax Tribunal for further proceedings.[20]

---

[19] The Attorney General maintains that intercounty equalization historically has been subjected to limited review and cites *Auditor General v Wayne County Supervisors,* 216 Mich 256; 185 NW 157 (1921).

However, this case hardly stands for the proposition that intercounty equalization is to be treated differently from intracounty equalization since the Court in *Auditor General* relied upon *Attorney General v Sanilac Supervisors,* 42 Mich 72; 3 NW 260 (1879), and *McDonald v City of Escanaba,* 62 Mich 555; 29 NW 93 (1886), which were cases involving *intra*county equalization.

Also *Auditor General* involved the scope of *judicial* review (now governed by Const 1963, art 6, § 28). Judicial review and review by the Tax Tribunal, a body with the necessary special expertise to cope with complex tax questions are vastly different matters.

[20] As this matter is remanded to the Tax Tribunal, we find it

We are not unmindful of the practical impact of our decision. Review of intercounty equalization by the Tax Tribunal will consume time, and there is no debate that time is of the essence to the whole equalization process. However, we believe the Legislature possesses the creative capabilities to remedy whatever practical problems may arise, if any. In order to give them the time to devise any needed procedures, we make our holding applicable to intercounty equalization for 1977 and thereafter except for the instant cases.

## IV—ADMINISTRATIVE PROCEDURES ACT

In *Cooper Twp v State Tax Commission, supra,* we held that the Administrative Procedures Act is applicable to STC proceedings adjudicating disputed *intra*county equalization determination. We said:

"The Administrative Procedures Act defines a 'contested case' to be 'a proceeding * * * in which a determination of the legal rights, duties or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing.' MCLA 24.203; MSA 3.560(103). The Township, as the representative for equalization purposes of all the taxpayers within its boundaries, has a valid and recognizable interest in assuring that its residents are not taxed at an unfair rate. Likewise, the county board of commissioners, as representatives of the entire county, have a duty to equalize the assessments throughout the county so that all taxpayers pay a proportionately fair share of the cost of government. By statute, the State Tax Commission is designated as the agency responsible for adjudicating disputed equalization findings between the township and the county. In that capacity it is authorized to conduct an evidentiary hearing. MCLA

unnecessary to discuss the exact parameters of judicial review of equalization proceedings.

211.34; MSA 7.52. In our opinion, therefore, the present matter presents a controversy squarely within the Administrative Procedures Act definition of a 'contested case'." (Footnote omitted.) 393 Mich 69, 70.

We also held that:

"When a particular controversy fits within the statutory definition of a 'contested case', and is not specifically controlled by another statute or constitutional provision, we believe that the Commission is required to comply with the procedures specified in the Administrative Procedures Act." 393 Mich 69.

There can be little doubt but that intercounty equalization proceedings fit within the statutory definition of a "contested case". The impact of intercounty equalization upon counties, local taxing units and individual taxpayers was outlined above; important interests are at stake. The adversaries in an intercounty equalization will be the different counties and/or a particular county and the State Tax Commission.

The Attorney General maintains, however, that our decision in *Cooper* does not control the instant case. He argues that the Legislature never intended the APA to apply to intercounty equalization proceedings before the STC and cites the tight statutory time-frame for completing intercounty equalization as proof. It would be impossible, he contends, for the STC to complete intercounty equalization in time for the school tax bills to be sent out on schedule in July and it would be extremely doubtful whether the process would be completed by December when the county and township bills are sent. He cites the fact that the Legislature has provided for continuation of assessment and levy of taxes during the pendency of

intra-county equalization litigation[21] but has made
no similar provision for intercounty equalization.
He concludes that given the tight schedule and
absence of statutory relief, the Legislature could
not have intended that the APA apply.

What the Attorney General is really asking us
to do is to create a judicial exception in the case of
intercounty equalization, because application of
APA to STC proceedings here may cause practical
problems. We decline to do so. A tight time scheme
and absence of interim taxing provisions alone
cannot be construed as a legislative intent to
exempt intercounty equalization proceedings from
the APA.

The Attorney General argues that applying APA
procedures (and permitting review by the tribunal)
will disrupt a process which has functioned effi-
ciently for years.

Recent reports concerning the equalization proc-
ess suggest that the process has been anything but
efficient.[22] By restricting the nature of the hearings
and by precluding review, an appearance of effi-
ciency may be maintained but inadequacies and
inequities when they exist will not be brought to
light and resolved.

As the plaintiffs suggest, application of the APA
to STC intercounty equalization will in the long
run help, not hamper the State's effort to equalize
the counties effectively and fairly. It will certainly

[21] MCLA 211.39a; MSA 7.80(1).

[22] *See Program Revision Request, State Tax Commission, Reorgani-
zation Alternative* and *Program Revision Request, State Tax Commis-
sion—3 Year Study Cycle.* The former report discussed maintaining
the present equalization process in the following terms:

"*Status Quo.* Cannot in good conscience ever be considered for a
moment. A growing backlog of assessment and equalization appeals, a
decline in current equalization information due to inadequate and
insufficient number of studies and insufficient manpower make this
not an alternative, but a prelude to chaos. Under present conditions,
the whole property tax system would almost surely break down
within a few years." p 14.

facilitate and expedite the efforts of the Tax Tribunal when reviewing intercounty equalization.

However, we recognize that initially the change from intercounty equalization as it is presently performed to equalization conducted in accordance with the APA will cause certain difficulties. In order to permit any necessary adjustments and to allow the Legislature to make any changes it deems advisable to assist in efficient functioning of the equalization process, we make our holding regarding application of APA standards applicable to intercounty equalization for 1977 and thereafter.

Plaintiffs also have asked us to rule the Administrative Procedures Act applies to proceedings before the Tax Tribunal. We decline to rule upon this question at this time. In *Ann Arbor Twp v State Tax Commission, supra,* 686-687, this Court said:

"We cannot pass judgment on how the Tax Tribunal conducts its proceedings until we have such proceedings before us. However, MCLA 205.721; MSA 7.650(21) states that the Tribunal 'is a quasi-judicial agency'. As such, we would expect it to conform to procedures applicable to other such agencies."

## V—CONCLUSION

We hold that the provisions of the Administrative Procedure Act must be followed by the State Tax Commission in performing intercounty equalization and that the Tax Tribunal has jurisdiction for direct review of intercounty equalization determinations by the STC.

The Court of Appeals is reversed and the matter is remanded to the Tax Tribunal for further proceedings consistent with this opinion.

No costs, a public question being involved.

LINDEMER, J., concurred with WILLIAMS, J.