FAIRPLAINS TOWNSHIP v MONTCALM COUNTY BOARD OF
COMMISSIONERS

Docket Nos. 149224, 155242. Submitted September 20, 1994, at Grand
Rapids. Decided November 21, 1995, at 9:20 A.M.

Fairplains, Ferris, and Richland Townships filed a petition in the
Tax Tribunal, challenging the 1991 county equalization adopted
by the Montcalm County Board of Commissioners for certain
agricultural realty in Fairplains and Ferris Townships and
commercial realty in Richland Township. The Tax Tribunal
upheld the challenged equalization. The townships appealed.
The appeals were consolidated.

The Court of Appeals *held:*

. 1. The object of county equalization is uniformity of property
tax assessments among the cities and townships in a given
county. County equalization requires the county board of com-
missioners to determine whether the taxing units in the county
have assessed property equally and uniformly at fifty percent of
true cash value. The county board of commissioners makes this
determination through the use of a sales-ratio study or an
appraisal study.

2. With regard to Fairplains Township, the Tax Tribunal did
not commit an error of law by excluding from the appraisal
study a sale of agricultural land by Ore-Ida Corporation to
Thomas Hansen. There was substantial evidence that the sale
was not representative of the value of agricultural land because
it was not an arm's length transaction. However, the Tax
Tribunal did commit errors of law in dismissing claims by
Fairplains Township of discriminatory treatment in the valua-
tion of an irrigation well and a barn. Fairplains Township
established a prima facie case that all other irrigation wells
were valued higher regardless of condition and that improve-
ments and inferior barns in other townships were valued
higher than those in Fairplains Township. The case must be
remanded to allow further proofs by Fairplains Township con-
cerning these claims of discriminatory treatment.

3. With regard to Ferris Township, the Tax Tribunal commit-

REFERENCES

Am Jur 2d, State and Local Taxation §§ 753-781.
See ALR Index under Tax Assessors and Collectors; Taxes.

ted an error of law in not excluding from the land study four sales of parcels that were not purchased or used for agricultural purposes. Ferris Township established a prima facie case that inclusion of these sales inflated the land values. The case must be remanded for further proceedings regarding Ferris Township's claim.

4. With regard to Richland Township, the Tax Tribunal committed an error of law in determining that Richland Township did not timely raise the claim that the economic condition factor used in the appraisal study was too high. The Tax Tribunal dismissed the claim on the basis that the alleged error was not brought to the county's attention before county equalization and was raised for the first time before the tribunal. However, a proceeding before the tribunal is original and independent and is considered de novo, MCL 205.735; MSA 7.650(35). The Tax Tribunal also erred in dismissing the claim on its merits. Richland Township presented a prima facie case that the economic condition factor was too high. The case must be remanded for further proceedings regarding this claim.

5. The Tax Tribunal did not abuse its discretion in denying the disqualification of the tribunal judge who heard the petition. The townships failed to show that the probability of actual bias is too high to be constitutionally tolerated.

Affirmed in part, reversed in part, and remanded.

1. TAXATION — REAL PROPERTY TAXES — COUNTY EQUALIZATION.

The object of county equalization is uniformity of property tax assessments among the cities and townships in the county; county equalization requires the county board of commissioners to determine, through the use of a sales-ratio study or an appraisal study, whether the taxing units in the county have assessed property equally and uniformly at fifty percent of true cash value.

2. TAXATION — REAL PROPERTY TAXES — COUNTY EQUALIZATION — LAND VALUE STUDIES — TAX TRIBUNAL.

The Tax Tribunal, when reviewing a county equalization, has the same powers as the county board of commissioners to include or exclude sales from the land value study done by the county (MCL 211.34[4]; MSA 7.52[4]).

3. TAXATION — REAL PROPERTY TAXES — COUNTY EQUALIZATION — LAND VALUE STUDIES — PROPERTY USES.

The nonagricultural use of property classified as agricultural is a relevant consideration in determining whether the value of the property is representative of the class of agricultural property

and whether the property may be included in a land value study of agricultural property.

4. TAXATION — REAL PROPERTY TAXES — COUNTY EQUALIZATION — TAX TRIBUNAL.

Review by the Tax Tribunal of a county equalization is de novo; evidence not presented to the county before final equalization may be reviewed by the Tax Tribunal (MCL 205.735; MSA 7.650[35]).

*Reed, Stover & O'Connor, P.C.* (by *Patricia R. Mason* and *James W. Porter*), for the petitioners.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Daniel R. Kubiak* and *Jeffrey V. H. Sluggett*), for the respondent.

Before: REILLY, P.J., and TAYLOR and M. E. KOBZA,* JJ.

PER CURIAM. These matters arise from disputes over the 1991 county equalization of commercial and agricultural real property located in Montcalm County. In essence, petitioners contend that respondent Montcalm County Board of Commissioners' determinations of true market value for commercial and agricultural classes of property and the resulting equalized valuations were too high, thus causing the base upon which property taxes were levied to be excessive. The tribunal, following the presentation of petitioners' cases, denied their request for relief. We affirm in part, reverse in part, and remand.

The General Property Tax Act, MCL 211.1 *et seq.*; MSA 7.1 *et seq.*, provides for the yearly assessment and equalization of property for ad valorem tax purposes. The major successive steps in the process include assessment by the local assessor, county ("intracounty") equalization, and

* Circuit judge, sitting on the Court of Appeals by assignment.

state ("intercounty") equalization. OAG, 1981-1982, No. 6007, p 450 (November, 18 1981).

The initial step is the assessment, by the local assessor, of property at fifty percent of its true cash value. Const 1963, art 9, § 3; MCL 211.27a(1); MSA 7.27(1)(1).

> Local assessors are required to use the commission's *Assessor's Manual* in preparing assessments, MCL 211.721; MSA 7.40, and they use sales-ratio studies or appraisal studies, rather than assessments of all individual pieces of property, in fulfilling their function. A sales-ratio study compares the sales prices of recent typical sales within a given property classification with the prior year's assessed values for those same parcels. An appraisal study is similar, but is used in situations where there is an insufficient number of recent sales. Appraisal studies compare actual appraisals of a sampling of properties to the previous year's assessments. The resulting ratio is applied across the board to all properties within the classification to obtain assessed values for the current year. [*Washtenaw Co v Tax Comm*, 422 Mich 346, 351-352, n 1; 373 NW2d 697 (1985).]

An individual taxpayer who is aggrieved by an assessment may appeal to the local board of review, MCL 211.30; MSA 7.30, and, if necessary, to the Tax Tribunal, MCL 205.735; MSA 7.650(35), and to this Court. Absent an appeal, the individual assessment is final and is deemed to be correct. OAG, *supra* at 451.

The next step in the process is intracounty equalization, which is performed by the county board of commissioners, assisted by the county equalization department. Generally, equalization at both the county and state levels seeks to achieve uniformity of property tax assessments among the cities or townships within a county, in

the case of intracounty equalization, and among all counties within the state, in the case of inter-county equalization. *Washtenaw, supra.* Equaliza-tion is based on a theory that an assessor will assess uniformly within the district but may assess at a level different from those of assessors in other districts. Comment, *The Michigan property tax: Assessment, equalization, and taxpayer appeals,* 17 Wayne L R 1397, 1439 (1971).

Intracounty equalization requires the county board of commissioners in each county to deter-mine whether the taxing units within their respec-tive counties have equally and uniformly assessed property at fifty percent of its true cash value. *Emmet Co v State Tax Comm,* 397 Mich 550, 560; 244 NW2d 909 (1976) (WILLIAMS, J., dissenting). The county board of commissioners accomplishes this task through the use of an equalization study, also in the form of a sales-ratio or an appraisal study, and outlined in the commission's *Assessor's Manual,* Chapter XVI. *Washtenaw, supra.*

In an appraisal equalization study, a sample of properties is selected from each class in each taxing unit and the appraised values of these parcels are compared with the assessed values put on the same parcels by the local assessor. In each property classification, the total assessed value of the sample from the taxing unit is divided by the total appraised value of the same sample to arrive at an assessment-appraisal ratio expressed as a percentage. For example, if the county board of commissioners determines that the total appraised value of the sample parcels is $100,000 and the assessed value on the local tax roll for the same parcels totals only $40,000, the percentage ratio of assessed value to appraised value would be forty percent. On the basis of an assumption that the local assessor assessed all property within the

class uniformly at forty percent of true cash value, rather than the fifty percent required by law, the equalization department would take the total assessed value within the class from the tax roll and divide it by the percentage ratio (in this example, forty percent) to arrive at the total true cash value for that particular class of property in the unit. If in the above example the local assessor had given agricultural property a total assessed value of $400,000, the $400,000 would be divided by 0.4, (i.e., forty percent) or multiplied by the reciprocal of the ratio, referred to as the "equalization factor," (in this example, 2.5) which equals $1,000,000 as the true cash value for all properties in the class of that unit.

Intracounty equalization is followed by inter-county or state equalization, which is conducted by the State Tax Commission in accordance with MCL 209.1 *et seq.*; MSA 7.601 *et seq.* The total valuation of each county, as equalized by that county is reported to the commission. Then the commission staff conducts its own equalization studies to compute an equalization factor for each class in each county. The result of this equalization, after being spread back ratably through the local units, finally determines the value used to calculate taxes.

The arguments advanced by Fairplains and Ferris on appeal concern the land value study upon which the intracounty equalization appraisal studies were based. The county land value study, which was prepared by the Montcalm County Equalization Department, was used to calculate the value per acre of agricultural land in each township in the county. In a land value study, selected recent sales of properties are examined. The sale price of each parcel is reduced by the amount, if any, attributable to improvements, such

as a barn or a well, to determine the price paid for
the land. In the land value study, the sales price
reduced by improvements is called the "residual to
land." Because the value of agricultural land var-
ies depending on the productivity of the soil,
rather than dividing the residual to land price by
the number of acres to determine a per acre value,
the number of acres is adjusted to reflect the
different types of soil present on the parcels. Types
of soil are grouped by their percentage of produc-
tivity. For purposes of the land value study, No. 1
soil is considered to be one hundred percent pro-
ductive, No. 2 soil is ninety-five percent produc-
tive, and so on. The number of acres in each soil
group is multiplied by the percentage of productiv-
ity to determine the "equivalent acres." For exam-
ple, ten acres of a soil type that is rated as fifty-
five percent productive has 5.5 equivalent acres.
The total residual to land price of the selected
parcels is divided by the total equivalent acres to
determine the "No. 1 soil value" of the township.
The No. 1 soil value is then used to appraise other
parcels selected as a sample for the equalization
appraisal study of that township.

The underlying premise of Fairplains' and Fer-
ris' contentions is that errors in the land value
studies resulted in values per acre that were too
high and that, when these inflated values were
used in the appraisal studies, the resulting ap-
praised values of the sample were too high. This
then resulted in a lower assessment/appraisal ra-
tio and a higher intracounty equalization factor.
With this background in mind, the arguments
advanced by Fairplains and Ferris on appeal can
be properly analyzed.

In these cases, seven townships in Montcalm
County challenged the county equalization by fil-
ing petitions with the Michigan Tax Tribunal

asserting that the equalization was unfair, unjust, inequitable, or discriminatory, in violation of MCL 211.34(4); MSA 7.52(4). For relief, the townships requested that the tribunal make deductions in the valuations of the classes of property in order to bring the townships' commercial and agricultural assessments to fifty percent of true cash value. The claims of four of the townships were dismissed, but the claims of Fairplains Township and Ferris Township, (challenging the equalization of the agricultural class) and Richland Township (challenging the equalization of the commercial class of real property) were heard. At the hearings before the tribunal, petitioners bore the burden of proof to show that the county's establishment of equalization was unfair, unjust, inequitable, or discriminatory. The tribunal denied relief, finding that the townships' contentions were unsupported by competent, material, and substantial evidence.

This Court's review of Tax Tribunal decisions is limited.

> When fraud is not alleged, we ask whether the Tax Tribunal committed an error of law or adopted a wrong principle. We will accept the tribunal's factual findings as final, provided they are supported by competent, material, and substantial evidence. Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence. [*Jones & Laughlin Steel Corp v City of Warren,* 193 Mich App 348, 352; 483 NW2d 416 (1992). Citations omitted.]

With these principles in mind, we turn to the specific challenges of each township.

### FAIRPLAINS TOWNSHIP

The Montcalm County Equalization Department

conducted an appraisal study of sixteen parcels of land in the agricultural classification. The appraisals were based on a $900 an acre figure calculated from a land value study. Fairplains Township contended that, had personal property and improvements from sales of real property included in the land value study been properly deducted, the value would have been $750 an acre for this agricultural land. In support of its contention, Fairplains presented evidence showing that an irrigation system, which was part of a sale from Ore-Ida Incorporated, an irrigation well, and a barn were inaccurately valued. The tribunal disagreed with Fairplains with regard to all the claims.

With regard to the irrigation system that was included in a sale of agricultural land from Ore-Ida to Thomas Hansen, the tribunal removed the entire sale from the equalization department's land value study, finding that the sale was not an open market transaction. The exclusion of the Ore-Ida to Hansen sale reduced the No. 1 value from $900 to $875, and increased the percentage ratio from 39.95 percent to 40.84 percent.

Fairplains' main contention on appeal is that the tribunal erred in removing the Ore-Ida to Hansen sale from the land value study, thereby refusing to properly value the personal property attributable to that sale. We disagree.

Each side presented proofs regarding the value of the personal property included in the Ore-Ida to Hansen sale. Petitioner's proofs varied relative to the items of personal property actually included in the sale, as well as to the value of that personal property. Petitioner's proof with regard to the value of the personal property lacked reliability. At various times, Mr. Hansen, the purchaser, val-

ued the property at $31,300, $26,900, and $21,500. Mr. Hansen conceded that he never negotiated a particular value of the personal property with Ore-Ida. Although an Ore-Ida representative confirmed that the personal property included in the sale was not "junk equipment," Ore-Ida had fully depreciated the property on its books, and if anything, Ore-Ida would have considered the property at salvage value.

The tribunal weighed this evidence and determined that the sale was not representative of the value of agricultural land because the sale was not an arm's length transaction. The tribunal concluded that the sale may have been influenced by adverse tax consequences on Ore-Ida's part. Rather than attempt to determine the value of the personal property, the tribunal simply excluded the sale from the study because it did not provide an accurate value of agricultural land for the land value study.

Pursuant to MCL 211.34(4); MSA 7.52(4), the tribunal had the authority to exclude the sale:

> If the state tax tribunal, after the hearing, decides that the valuations of the county were improperly equalized, it shall proceed to make deductions from, or additions to, the valuations of the respective townships, cities, or school districts as may be considered proper, and in so doing the tribunal shall have the same powers as the county board of commissioners had in the first instance.

The county board of commissioners had the authority to select the sales of properties to be used in the land value study. Having decided that the valuations proposed were improper because the land value study included a sale that was not at arm's length, the tribunal, pursuant to MCL 211.34(4); MSA 7.52(4), had the same power in

regard to the selection of properties as the county board of commissioners had in the first instance.

Accordingly, we conclude there was substantial evidence on the record that the Ore-Ida to Hansen sale did not provide an accurate land value and that the tribunal did not commit an error of law in excluding the sale from the study.

Fairplains further argues that the tribunal erred in dismissing its claim regarding the valuation of the irrigation well. Fairplains asserted that it was treated in a discriminatory manner because the irrigation well was valued at $5,000 while all other wells in the county, regardless of condition, were valued at a flat rate of $25,000. The tribunal disagreed and dismissed this claim, concluding that Fairplains failed to present proof that the equalization department valued all irrigation wells throughout the county at $25,000 regardless of their condition or value.

We conclude that the tribunal committed an error of law in failing to base its decision on competent, material, and substantial evidence on the record as a whole. *Oldenburg v Dryden Twp,* 198 Mich App 696, 698; 499 NW2d 416 (1993). Fairplains presented the complete land value study for the county, showing that, with the exception of the well at issue here, all wells in the county were valued at $25,000. There is no evidence on the record to support the tribunal's determination. In fact, both the Fairplains Township assessor's testimony and the complete land value study for the county refute the tribunal's determination. Accordingly, we reverse the tribunal's dismissal of this claim because Fairplains' proofs were sufficient to establish a prima facie case that it was treated in a discriminatory manner.

Fairplains' final claim on appeal is that a barn

included in one of the sales in the study was improperly valued at $500. With regard to this issue, we also conclude that the tribunal committed an error of law in dismissing this claim at the close of petitioner's proofs. Fairplains properly employed the market approach to valuation to show that improvements on property in Fairplains Township were being valued differently than those in other townships. Fairplains introduced evidence of a 1988 sale in neighboring Bushnell Township of another barn for $1,950 that it asserted was inferior to the barn, valued at $500, at issue in this case. This was sufficient to establish a prima facie case and dismissal at that juncture was improper because the tribunal failed to base its decision on competent, material, and substantial evidence on the record as a whole. We reverse and remand so that further proofs may be presented.

### FERRIS TOWNSHIP

In a land value study consisting of nine sales, the Montcalm County Equalization Department determined that Ferris Township's agricultural class properties were valued at $800 an acre for No. 1 soil. Using this analysis, the equalization department appraised eighteen parcels, resulting in an assessed value to appraised value ratio of 46.29 percent. At the tribunal hearing, Ferris claimed that four of the nine sales should have been excluded from the land value study because the parcels were not purchased or used for agricultural purposes and, thus, did not reflect the fair market value for agricultural land in the township. Removal of the four parcels would have reduced the No. 1 soil value from $800 to $725 an acre, and increased the ratio from 46.29 percent to 49.10 percent.

In support of its claim, Ferris pointed to the fact that the three thirty-eight-acre parcels included in the agricultural land value study were reclassified as residential in 1991. In fact, one of the thirty-eight-acre parcels was used as a buffer zone to protect the adjacent residents from hunters, the second thirty-eight-acre parcel was sold for use as a mobile home site, and the third thirty-eight-acre parcel was purchased for a residential building site, although half of that parcel was being farmed. The remaining 110-acre parcel had not been farmed in several years and was used as a residential or recreational property, although it was classified as agricultural. The tribunal granted respondent's motion to dismiss, holding that the uses of the four parcels in question were representative of uses in the land classified as agricultural at the time of sale and at the time the equalization department developed its land value study. Accordingly, the tribunal found petitioner's reasons for requesting revision of the county's land value study to be without merit and unsupported by convincing evidence.

On appeal, Ferris argues that the tribunal made an error of law in dismissing its claim that four of nine sales included in the land value study should be removed because the sales did not reflect market value for agricultural land. The tribunal noted that the properties were classified as agricultural at the time of sale and at the time the equalization department developed the land value study. The tribunal then explained:

We find Petitioner has failed to address a significant issue relative to their [sic] contention: Do the sales in question represent properties actually classified as agricultural on the assessment roll?

Properties included in a land value analysis

should represent the types of properties that comprise that class. Petitioner's request to remove the 110 acre parcel because it is not currently being farmed even though it is classed by the assessor as agricultural is unreasonable. This property obviously represents at least one property in the class. Petitioner has failed to present convincing evidence that would indicate to this Tribunal that any of the properties requested to be removed are not representative of properties classified as agricultural on the assessment roll. We find Petitioner's reasons for requesting revision of the county's land value analysis to be without merit and unsupported by convincing evidence.

In addressing this issue, the distinction between an appraisal study and a land value study is crucial. Ferris acknowledges in its brief that in an appraisal/ratio or sales/ratio study:

[A]ny property classified in a particular class, at the time of the sale, should remain in the study [because] the Equalization Department is studying the class itself. In other words, the Equalization Department is evaluating how well a governmental unit has assessed a particular class of property.

However, the purpose of a land value study is to calculate a value per acre that will be used to appraise the sample of other properties selected for an appraisal study. The calculation of the value per acre involves averaging. Therefore, the value per acre is skewed by the inclusion of sales that are not representative of the value of land in the classification. For example, the value of acreage classified as agricultural that is purchased by a commercial developer to erect a shopping mall is generally higher than acreage purchased for strictly agricultural purposes. The tribunal implicitly recognized the importance of using representa-

tive sales when it excluded the Ore-Ida to Hansen sale from the Fairplains' land value study.

In determining true cash value for assessment purposes, an assessor is required to consider

> the advantages and disadvantages of location; quality of soil; zoning; existing use; present economic income of structures, including farm structures; present economic income of the land if the land is being farmed or otherwise being put to income producing use. [MCL 211.27(1); MSA 7.27(1).]

The inclusion of these factors indicates that the Legislature recognized that use may influence value. Our Supreme Court has also recognized that the use to which a prospective buyer would put the property will influence the price the buyer would be willing to pay. *Edward Rose Bldg Co v Independence Twp,* 436 Mich 620, 633; 462 NW2d 325 (1990).

Similarly, we believe that use is a relevant consideration when determining whether a land value study is faulty because the properties selected are not representative of the class as a whole. Under the tribunal's analysis, for example, a land value study that will be used in the appraisal of agricultural land could be comprised entirely of sales of farms to commercial developers, as long as the properties had not been reclassified at the time the study was completed. The price that the developers would be willing to pay would presumably be higher than if the property were purchased for agricultural use. Nonetheless, the land value calculated from the higher sales prices paid by the developers would then be used in the appraisal study of a different sample of agricultural parcels that were not influenced by the commercial development. In such an instance,

the appraisal study would indicate that the assessor, who was properly considering use in the assessments, was consistently under-assessing the properties in the classification. The assessment to appraisal ratio resulting from the use of the inflated land value would be lower, and the equalization factor would be higher. The eventual result would be an equalization that is unfair, unjust, and discriminatory.

Accordingly, we conclude that the tribunal made an error of law in granting respondent's motion to dismiss. Ferris made a prima facie case that the equalization was unfair, unjust, and discriminatory by showing that the agricultural land value used in the appraisal study was inflated because the land value study included sales of parcels that were not being used for agricultural purposes and were not representative of the value of the agricultural classification. We reverse the tribunal's dismissal of Ferris' claim and remand for further proceedings consistent with this opinion.

### RICHLAND TOWNSHIP

Richland asserted that the economic condition factor used in the county's appraisal study of the commercial classification was too high. The tribunal dismissed the claim on the basis that the alleged error was not brought to respondent's attention before county equalization and was raised for the first time before the tribunal. The tribunal further found that even if the allegations were timely made, Richland failed to show proof that respondent discriminated in conducting its county equalization process.

Both parties cite *Yankee Springs Twp & Prairieville v Barry Co Bd of Comm'rs*, 1 MTTR 465 (Docket No. 15183, December 9, 1977), as holding

that a local unit of government must present proof of error to the county board before final equalization in order to preserve the issue for consideration before the tribunal. While we agree that parties should, if for no other reason than protection of their own interests, make diligent efforts to investigate possible errors before final equalization, we disagree that a party's failure to discover an error before final equalization precludes the tribunal from reviewing that claim of error. Such a preemptive rule is inconsistent with the Tax Tribunal Act.

> A proceeding before the tribunal is original and independent and is considered de novo. [MCL 205.735; MSA 7.650(35).]

Precluding petitioner from presenting evidence that was not presented to the county before final equalization

> is diametrically opposed to the concept of an original, independent, de novo proceeding at which the petitioner simply bears the burden of proof. [*Alhi Development Co v Orion Twp,* 110 Mich. App 764, 768; 314 NW2d 479 (1981).]

Further, because there is no verbatim record of the proceedings below, the *Yankee Springs* rule cannot be rationally administered. Without a transcript, how could it be determined what evidence, to say nothing of theories and claims, is new? It is an invitation to arbitrary and ultimately unreviewable decisions by the tribunal. Finally, because there is no statutory requirement mandating even that the equalization be protested to the county before the tribunal may acquire jurisdiction (see MCL 205.735[1]; MSA 7.650[35][1], MCL 211.34; MSA 7.52), the *Yankee Springs* rule is

without basis. Thus, the tribunal erred in dismissing Richland's claim as untimely.

With regard to the tribunal's determination on the merits, finding that Richland's proofs regarding this claim were insufficient, we conclude that the tribunal committed an error of law in failing to base its decision on competent, material, and substantial evidence on the whole record. The only evidence on the record indicated that the county's determination of an economic conditions factor of 0.75 was incorrect. Further, Richland presented evidence that the county made its determinations arbitrarily and that the county did not follow its own studies. These proofs established a prima facie case that the economic condition factor was derived in an unfair, unjust, inequitable, and discriminatory fashion. Accordingly, we reverse and remand for further proceedings.

Petitioners collectively argue that the tribunal abused its discretion in refusing to disqualify the tribunal judge from the hearing. After reviewing the record, we conclude that petitioners have failed to show that the probability of actual bias is too high to be constitutionally tolerated. *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.